[Civ. No. 60619. Second Dist., Div. Five. Sept. 29, 1981.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
BURL D., Real Party in Interest.

[Civ. No. 60620. Second Dist., Div. Five. Sept. 29, 1981.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ERNEST B., Real Party in Interest.

[Civ. No. 60661. Second Dist., Div. Five. Sept. 29, 1981.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
FERNANDO M., Real Party in Interest.

[Civ. No. 60662. Second Dist., Div. Five. Sept. 29, 1981.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JESSE S., Real Party in Interest.

COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Roderick W. Leonard, Rodolfo Victoria and Sterling S. Suga, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Morton E. Levy, Marcia Gallindo and John Hamilton Scott, Deputy Public Defenders, for Real Parties in Interest.

OPINION

STEPHENS, Acting P. J.—Each of the within petitions involves essentially identical facts and the same legal issue. We issued alternative writs at the direction of the Supreme Court. For simplicity's sake we are issuing a single decision.

Each of the real parties, prior to May 25, 1979, signed an agreement for entry of judgment regarding paternity and child support, pursuant

to Welfare and Institutions Code section 11476.1.[1] Petitioner had these agreements reduced to judgment, also prior to May 25, 1979.[2]

On May 25, 1979, the Court of Appeal, in *County of Ventura* v. *Castro* (1979) 93 Cal.App.3d 462 [156 Cal.Rptr. 66] (hereinafter *Castro*), held Welfare and Institutions Code section 11476.1 unconstitutional because it permitted entry of a final judgment against a noncustodial parent, based upon an out-of-court agreement, without providing notice and an opportunity to be heard and in the absence of a showing of a voluntary, knowing and intelligent waiver of constitutional rights by the parent. *Castro* expressly declined to address the issue of its own retroactivity. (93 Cal.App.3d 462, 474, fn. 2.)

No payments were ever made by any of the real parties in the within matters under the agreements or judgments. Petitioner filed orders to show cause in re contempt against each of the real parties.[3] They each countered with a motion to vacate judgment citing *Castro* and alleging that they had not been advised of or knowingly waived their constitutional rights prior to signing the underlying agreement which formed the basis for the paternity and support judgment. Respondent granted the motions to vacate judgment and the within petitions followed.

■ The sole issue urged by petitioner is that *Castro* should not be applied retroactively to judgments obtained prior to the time it was decided. Petitioner points out that between the effective date of section 11476.1 and May of 1979 the District Attorney of Los Angeles obtained over 31,000 judgments pursuant to the statute. Petitioner also submitted a declaration of the Chief of the Child Support Operations

---

[1]Real party Burl D. acknowledged paternity of David D., born May 20, 1975, and agreed to make monthly child support payments of $100. Real party Ernest B. acknowledged paternity of Shani B., born May 31, 1969, and agreed to make child support payments of $120 a month. Real party Fernando M. acknowledged paternity of Vanessa M., born April 10, 1977, and agreed to make monthly support payments of $100. Real party Jesse S. acknowledged paternity of Brian S., born February 3, 1969, and agreed to make monthly support payments of $60.

[2]The judgment against Burl D. was entered July 11, 1977. The judgment against Ernest B. was entered August 9, 1978. The judgment against Fernando M. was entered March 9, 1978. The judgment against Jesse S. was entered August 8, 1978.

[3]The orders to show cause against Burl D., Ernest B. and Jesse S. were filed after the decision in *Castro*. The order to show cause against Fernando M. was filed prior to the decision in *Castro*, but no action was taken on it by the respondent court until after that decision.

Bureau of the California State Department of Social Services estimating that between July 1976 and March 1979 there were over 80,000 of such cases state wide. Between January 1, 1976, and October 7, 1980, the Los Angeles County Court Trustee collected over $30 million under such judgments. Petitioner thus urges that there had been extensive reliance upon the statute prior to *Castro's* holding of its invalidity, and that the effect on the administration of justice of a holding that *Castro* is retroactive would be dire indeed.

Although the parties cite various cases on the issue of retroactivity (see, e.g., *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 308-310 [110 Cal.Rptr. 329, 515 P.2d 273]; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 74 [145 Cal.Rptr. 368, 577 P.2d 188]), we find a later opinion of our Supreme Court, *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 34 [154 Cal.Rptr. 529, 593 P.2d 226], to be both more persuasive and more analogous to the circumstances of the instant case.

In *Salas* the Supreme Court held for the first time that in an action brought by the state to establish the defendant's paternity of a minor child and to enforce child support, the indigent defendant was entitled to the appointment of counsel to represent him. The court held that the manner in which the judgments in that case had been obtained without the assistance of counsel for the father was unfair and unreliable, and that the appointment of counsel was necessary to enable the accused father to defend fully and fairly. (*Id.*, at pp. 31-34.) However, notwithstanding that "[l]ack of counsel seriously impinges upon the integrity of the fact-finding process," (*id.*, at p. 34) the Supreme Court did not render its decision retroactive. The decision was limited to the appellants in that case and to all cases not final as of the date of the finality of that opinion. (*Id.*, at p. 34.) Rejecting retroactive application of the decision, the court stated: "However, where a judgment of paternity has become final, obligations, and, in some cases, familial relationships have been established by that judgment. Therefore, this court holds that in cases where a judgment of paternity has become final, the fact that the defendant did not have counsel may not be advanced as a reason to attack that judgment." (*Id.*, at p. 34.)

As recognized in *Salas*, a judgment of paternity is different from a mere money judgment between a debtor and creditor such as involved in *Isbell* v. *County of Sonoma, supra.* In some cases familial relation-

ships have been established by final judgments rendered pursuant to the statutory procedure prior to the *Castro* case. There is a strong public interest in the finality of such judgments. We conclude that the *Castro* decision does not retroactively invalidate the judgments of paternity and child support in the instant cases.

Let peremptory writs issue commanding respondent court in the within cases to vacate its orders vacating the judgments of paternity and support. The alternative writs are discharged.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied October 9, 1981, and the petition of real parties in interest for a hearing by the Supreme Court was denied November 27, 1981. Kaus, J., did not participate therein.