[L.A. No. 31678. Jan. 30, 1984.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v.
ENRIQUE ALVAREZ SOTO, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp and Robert H. Philibosian, District Attorneys, Harry B. Sondheim, Donald J. Kaplan and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Appellant.

Donald N. Stahl, District Attorney (Stanislaus), John Replogle, Deputy District Attorney, John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, Donald A. Gonya, Randolph W. Gaines and Robert E. Keith as Amici Curiae on behalf of Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Morton E. Levy, Marcia Galindo and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**GRODIN, J.**—The County of Los Angeles (County) appeals from an order of the superior court granting defendant's motion to set aside a judgment entered pursuant to an "Agreement for Entry of Judgment" that had been executed in conformity with Welfare and Institutions Code section 11476.1.[1]

In *County of Ventura* v. *Castro* (1979) 93 Cal.App.3d 462 [156 Cal.Rptr. 66], the court held that section 11476.1, authorizing entry of judgment to

---

[1]All future references are to that code unless otherwise indicated.

determine paternity and child support pursuant to stipulation, was constitutionally infirm because it failed to provide for the notice and hearing required by due process, and made no provision for waiver of those rights by the defendant.[2]

■ This case concerns the status of an agreement for entry of judgment executed in conformity with section 11476.1 prior to *Castro*. We shall conclude that such agreements are not void, but may be set aside if challenged promptly by a defendant who establishes *both* (1) that he or she was not advised before executing the agreement that he or she had a right to a trial on the question of paternity and ability to support, and (2) that he or she was unaware of a defendant's rights in this regard and would not have executed the agreement otherwise. In this case, the trial court ordered the judgment set aside on the basis of a record which establishes the first requirement, but not the second. Accordingly, the order must be reversed.

In June 1978, defendant executed an "Agreement for Entry of Judgment" in conformity with section 11476.1. In the agreement defendant acknowledged he was the father of Ezequiel A., born April 25, 1977, and that he had the ability to pay child support of $120 per month. The agreement stipulated to the entry of a judgment ordering payment of that amount in semimonthly payments through a court trustee, and on September 15, 1978, judgment was entered pursuant to the stipulation.

Two years later defendant, confronted with an order issued by the superior court directing him to show cause why he should not be held in contempt for failure to make the child support payments required by the judgment, moved to vacate the judgment on grounds that it was void. (Code Civ. Proc., § 473.) He alleged in support of his motion that he had been denied due process in the manner in which his consent to the agreement was obtained, and that he had not voluntarily and knowingly executed the agreement. An evidentiary hearing revealed that the agreement was presented to defendant for execution by a child support investigator of the Los Angeles County District Attorney's office; and, defendant not having disputed paternity, the investigator did not advise him of his right to a judicial pro-

---

[2]Section 11476.1 was amended in 1980 to conform to the *Castro* opinion. As it read in 1978 the section provided in pertinent part: "In any case where the district attorney has undertaken enforcement of support, the district attorney may enter into an agreement with the noncustodial parent, on behalf of the custodial parent, a minor child, or children, for the entry of a judgment determining paternity, if applicable, and for periodic child support payments based on the noncustodial parent's reasonable ability to pay. Prior to entering into this agreement, *the noncustodial parent shall be informed that a judgment will be entered based on the agreement.* The clerk shall file the agreement without the payment of any fees or charges. The court shall enter judgment thereon without action." (Italics added.)

ceeding in which the People would be required to prove paternity and the amount of support to be paid. Based on these facts, and on the authority of *County of Ventura* v. *Castro, supra,* 93 Cal.App.3d 462, the trial court concluded that the stipulated judgment was void for lack of a knowing, intelligent, and understanding waiver by defendant of his right to notice and opportunity to be heard on the issues of paternity and support. It granted defendant's motion to set aside the judgment. It is from this order that the County appeals.

## I

The County contends that *Castro* should not be applied retroactively to invalidate final judgments, and that even if that decision is applicable in some circumstances, it should not apply in cases in which the defendant does not dispute paternity. The issue as we see it, however, is not whether *Castro* is retroactive, but what due process requires.

In concluding that section 11476.1 failed to accord defendants the safeguards demanded by due process the Court of Appeal in *Castro* was guided by this court's invalidation of the "cognovit" procedures formerly authorized by Code of Civil Procedure sections 1132 through 1134. In *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61 [145 Cal.Rptr. 368, 577 P.2d 188], we concluded that the confession of judgment, or "cognovit," procedure violated the due process clause of the Fourteenth Amendment because it neither provided a debtor notice and opportunity to be heard, nor required that the record demonstrate a voluntary, knowing, and intelligent waiver of these rights. Under those procedures a creditor held an agreement for entry of final judgment, executed by a debtor in the amount of a sum due or to become due, as security for payment of the debt. Upon default the cognovit could be presented to the court for filing without notice to the debtor. The clerk would thereupon enter judgment in conformity with the confession of judgment. The judgment became subject to immediate enforcement although the debtor might not know that it had been entered and, therefore, even in the case of abuse, might not have an opportunity to move before execution to have the judgment set aside.

"[N]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652]) is crucial to the validity of a judgment. (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 378 [28 L.Ed.2d 113, 119, 91 S.Ct. 780].) The cognovit procedures with which this court was concerned in *Isbell* did not afford notice to the debtor

that a default was claimed and thus denied him any opportunity to be heard on that issue prior to entry of judgment.

Section 11476.1, unlike the cognovit procedures, expressly required notice, providing: "Prior to entering into this agreement, the noncustodial parent shall be informed that a judgment will be entered based on the agreement." The agreement was not one for entry of judgment upon a future default, but contemplated entry of judgment upon execution. There was, therefore, no failure to afford constitutionally adequate notice of the proceeding if the requirements of the statute were met, and section 11476.1 was not invalid on this basis.

However, a judgment entered pursuant to a section 11476.1 agreement has consequences of far greater significance than a judgment for payment of money. It confirms the existence of a relationship which this court has recognized as "fundamental": it declares "the existence of the most basic biological relationship, that of parent and child. (Welf. & Inst. Code, §§ 11350.1, 11475.1; Civ. Code, §§ 7001, 7006; cf. *Boddie* v. *Connecticut, supra,* 401 U.S. at p. 383.) A determination of paternity has grave implications for all concerned—the alleged father, the child, the mother and the state. This court has termed the interest in maintaining a parent-child relationship a 'compelling one, ranked among the most basic of civil rights . . . .' (*In re B.G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244].) Freedom from an incorrect imposition of that relationship on either a parent or a child is an equally compelling interest.

"An adjudication of paternity may profoundly affect a person's life. It may disrupt an established family and damage reputations. Further, a court's determination of paternity exposes a defendant to deprivation of property and, potentially, liberty. It entails the obligation to support and educate a child (Civ. Code, §§ 196a, 7012), an obligation that does not end at the child's age of majority. (Civ. Code, § 206.) [Fn. omitted.] ■ Moreover, a child support order is more freely enforceable by garnishment than an ordinary civil judgment (15 U.S.C. § 1673(b)(1); Int. Rev. Code, § 6103(*l*)(6); Code Civ. Proc., § 690.6), and is not dischargeable in bankruptcy (11 U.S.C. § 35(a)(7)). Also, the failure to pay child support may be enforced through the civil contempt power (Civ. Code, § 7012), as well as the Uniform Civil Liability Act (Civ. Code, § 241 et seq.) and interstate assistance statutes (42 U.S.C. §§ 651-655; Code Civ. Proc., § 1650 et seq.). ■ A judgment of paternity, even if taken by default, is res judicata in any subsequent civil enforcement proceeding. (Civ. Code, § 7010, subd. (a).)" (*Salas* v. *Cortez* (1979) 24 Cal.3d 22, 27-28 [154 Cal.Rptr. 529, 593 P.2d 226], cert. den., 444 U.S. 900 [62 L.Ed.2d 136, 100 S.Ct. 209].)

We therefore agree with the Court of Appeal in *Castro* that the procedures for entry of judgment under section 11476.1 were constitutionally defective insofar as those procedures did not ensure that a noncustodial parent executing an agreement for entry of judgment knew of and waived his rights voluntarily and intelligently. So grave are the consequences of a paternity judgment that the possibility that the responsibilities of fatherhood might be imposed by involuntary default in a manner that was both unfair and unreliable led this court to hold in *Salas* that due process compels the appointment of counsel for indigent defendants in paternity actions. We cannot, consistent with this recognition of the consequences of a paternity judgment, uphold judgments entered pursuant to agreements made under section 11476.1 if the defendant was not aware of those consequences and did not knowingly and intelligently waive his right to a judicial hearing.

The grave consequences attendant upon an adjudication of paternity are analogous to those flowing from a judgment of conviction of a criminal offense. The entry of a judgment of paternity demands equivalent protections against involuntary or unintelligent waiver by a defendant of his right to trial.

In a criminal proceeding the entry of a guilty plea is more than a confession. It is itself a conviction leaving nothing to be done but give judgment and determine punishment. (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 242 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709].) That consequence demands a showing on the record that the plea is voluntary and not the product of "ignorance, incomprehension, coercion, terror, inducements [or] subtle or blatant threats," and that the guilty pleading defendant knowingly waived the constitutional rights to which he is entitled in a criminal trial. (*Id.*, at pp. 242-243 [23 L.Ed.2d at pp. 279-280]. See also, *In re Ibarra* (1983) 34 Cal.3d 277, 285-286 [193 Cal.Rptr. 538, 666 P.2d 980]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) So, too, the execution of an agreement for entry of a judgment of paternity leaves nothing to be done but entry of that judgment and of the order for support.

Certainly an alleged parent is entitled to no less solicitude in the acceptance of an admission of paternity and ability to support than is the criminal defendant in entering his plea of guilty. The coercive pressures on the defendant are analogous to those which may induce an involuntary guilty plea. Like the guilty pleading criminal defendant, the alleged parent is threatened with civil or criminal prosecution if he does not execute the agreement. The authority to execute the agreement on behalf of the state is vested in the district attorney when he has undertaken to enforce a support obligation. He is an officer with authority to initiate criminal prosecutions. Negotiations with a representative of the district attorney, who has the option of initiating

a prosecution, cannot be equated with arms length bargaining between parties of equal strength and sophistication. (Cf. *D. H. Overmyer Co.* v. *Frick Co.* (1972) 405 U.S. 174 [31 L.Ed.2d 124, 92 S.Ct. 775].)

 It is therefore essential to the validity of a judgment entered pursuant to section 11476.1 that the defendant understand the consequences of the agreement and ensuing judgment, and be aware of his right to a hearing at which the County is required to prove paternity and at which the defendant may present a defense with the assistance of counsel. Only if the record reflects this understanding is the judgment immune from a collateral attack.

## II

Section 11476.1 was amended in 1980 to ensure that future judgments will not be entered on the basis of agreements that are not voluntary and intelligent.[3] Our concern here, therefore, is only to determine the relief to

---

[3] As amended (Stats. 1980, ch. 682, § 1, p. 2068, and by Stats. 1982, First Ex.Sess., ch. 3, § 35, pp. 6907-6908, to add provisions for spousal support), section 11476.1 provides in pertinent part:

"(a) In any case where the district attorney had undertaken enforcement of support, the district attorney may enter into an agreement with the noncustodial parent, on behalf of a minor child or children, a spouse, or former spouse for the entry of a judgment without action determining paternity, if applicable, and for periodic child and spousal support payments based on the noncustodial parent's reasonable ability to pay or, if for spousal support, an amount previously ordered by a court of competent jurisdiction. An agreement for entry of a judgment under this section may be executed prior to the birth of the child and may include a provision that the judgment is not to be entered until after the birth of the child.

"(b) A judgment based on the agreement shall be entered only if one of the following requirements is satisfied:

"(1) The noncustodial parent is represented by legal counsel and the attorney signs a certificate stating: 'I have examined the proposed judgment and have advised my client concerning his or her rights in connection with this matter and the consequences of signing or not signing the agreement for the entry of the judgment and my client, after being so advised, has agreed to the entry of the judgment.'

"(2) A judge of the court in which the judgment is to be entered, after advising the noncustodial parent concerning his or her rights in connection with the matter and the consequences of agreeing or not agreeing to the entry of the judgment, makes a finding that the noncustodial parent has appeared before the judge and the judge has determined that under the circumstances of the particular case the noncustodial parent has willingly, knowingly, and intelligently waived his or her due process rights in agreeing to the entry of the judgment.

"(c) The clerk shall file the agreement, together with any certificate of the attorney or finding of the court, without the payment of any fees or charges. If the requirements of this section are satisfied, the court shall enter judgment thereon without action. The provisions of Section 4702 or Section 4801.7 of the Civil Code shall apply to such judgment. A judgment for support so entered may be enforced by any means by which any other judgment for support, may be enforced.

"(d) Upon request of the district attorney in any case under this section, the clerk shall set the matter for hearing by the court. The hearing shall be held within 10 days after the clerk receives the request. The district attorney may require the person who signed the agreement for the entry of judgment to attend the hearing by process of subpoena in the

which defendants may be entitled if they are subject to judgments entered on the basis of agreements executed prior to the effective date of the amendment. As we have noted above, these judgments were not entered without notice and are not void for lack of notice of the fact that judgment would be entered.

Defendant does not contend that a meaningful opportunity to be heard on the issues of paternity and ability to support would not have been available had he elected to require the institution of civil or criminal proceedings. Nor does he claim that he did not have notice that judgment would be entered against him. His challenge was supported by a declaration that he had not been advised that he would be subject to criminal prosecution if he failed to abide by the conditions of the judgment or that he had a right to a hearing and to consult with counsel, and that he was not aware that by executing the agreement he was waiving those rights. At the hearing on the motion he presented evidence that he was not advised of these matters, but offered no evidence to support the allegation that he was unaware of his rights or of the fact that he was waiving them. The superior court granted the motion on grounds that because defendant's rights had not been explained to him his waiver was not voluntary and intelligent.

A final judgment need not be invalidated solely because a defendant has not been advised of his rights, or because that advice does not appear on the record. We have concluded that the consequences of a paternity judgment are such that a knowing waiver is essential to a valid judgment. Advising the defendant of those rights, and placing that advice on the record is a prophylactic procedure, however. It is designed to avoid entry of judgments based on agreements that are not voluntary and intelligent. (Cf. *People* v. *Gallegos* (1971) 4 Cal.3d 242, 247-248 [93 Cal.Rptr. 229, 281 P.2d 237].) Because the procedure is prophylactic, and the defendant may in fact have been aware of the consequences of the agreement and the rights he waived by executing it, the failure to advise the defendant or to put that advice on the record does not negate the possible voluntariness of the agreement. (*In re Tahl, supra,* 4 Cal.3d 122, 135, fn. 11.) For that reason a defendant who makes a belated attack on the validity of a final judgment entered pursuant to section 11476.1 is not entitled to have the judgment set aside solely because he was not advised when the agreement was executed or because the record does not reflect advice regarding the defendant's rights and waivers thereof.

same manner as the attendance of a witness in a civil action may be required. The presence of the person who signed the agreement for entry of judgment at the hearing shall constitute the presence of the person in court at the time the order is pronounced for the purposes of Section 1209.5 of the Code of Civil Procedure if the court makes the findings required by paragraph (2) of subdivision (b)."

Rather, the defendant must establish that he was, in fact, unaware of the consequences of the agreement or of the fact that he waived his rights by executing the agreement, and that he would not have executed the agreement had he been aware of these matters. Only then must the judgment be set aside because the agreement on which it is based was not voluntary and intelligent in the constitutional sense. If the defendant establishes the involuntary nature of the agreement in this manner, and satisfies the court that he has been diligent in his efforts to set aside the judgment, the court must grant a motion to set aside the judgment. (Cf., *In re Ronald E.* (1977) 19 Cal.3d 315, 325-326 [137 Cal.Rptr. 781, 562 P.2d 684], and fn. 8.) These judgments are voidable, but they are not void.[4]

## III

The superior court ruled that defendant here had not knowingly and intelligently waived his rights to notice and opportunity to be heard. That ruling was based solely on evidence that defendant had not been advised of those rights. At the hearing no evidence was offered of defendant's actual knowledge of his rights, of whether he would have executed the agreement had he had such knowledge, or of his diligence in attempting to set aside the judgment once he learned of his rights. Defendant did not, therefore, carry the burden of a party making a collateral attack on a final judgment of paternity, and the court erred in setting aside the judgment.

The order appealed from is reversed insofar as it holds that the 1978 judgment of paternity is invalid and on that ground vacates it. The matter is remanded to the superior court with directions to afford defendant a new hearing at which he may present evidence of his lack of knowledge of his rights at the time the agreement for entry of judgment was executed, of the effect of that knowledge on his decision to execute the agreement, and of his diligence in seeking to set aside the judgment entered pursuant to the agreement.

Each party shall bear its own costs on appeal.

---

[4]To the extent that it is inconsistent with this conclusion in holding that a stipulated judgment for child support is void absent a judicial determination of the validity of any constitutional waiver *County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105 [183 Cal.Rptr. 741] is disapproved.

When this court denied fully retroactive effect to *Salas* v. *Cortez, supra,* 24 Cal.3d 22, 34, we recognized that preservation of familial relationships established by prior judgments, although rendered after trials at which the defendant did not have counsel, warranted limiting its effect to nonfinal judgments. Even the stability of family relationships, however, cannot outweigh the defendant's right to set aside a judgment entered on the basis of an involuntary waiver of the right to any hearing on the question of paternity. To the extent that it is inconsistent with this conclusion *County of Los Angeles* v. *Superior Court* (1981) 123 Cal.App.3d 988 [177 Cal.Rptr. 70] is also disapproved.

Bird, C. J., Broussard, J., and Reynoso, J., concurred.

**RICHARDSON, J.**—I concur with the majority opinion to the extent that it reverses the order vacating the 1978 judgment of paternity. I respectfully dissent, however, from the majority's holding that defendant may collaterally attack that judgment. In my view, we should conclusively presume the validity of the 1978 judgment.

A cognovit clause, or confession of judgment, is a device by which a debtor consents in advance to a judgment entered without notice and a hearing. (*D. H. Overmyer Co.* v. *Frick Co.* (1972) 405 U.S. 174, 176 [31 L.Ed.2d 124, 128, 92 S.Ct. 775].) While the United States Supreme Court has declined to hold that this device is per se violative of due process, that court has suggested that the result might be different in certain cases, where, for example, a great disparity of bargaining power exists. (*Id.,* at pp. 187-188 [31 L.Ed.2d at pp. 135-136].)

In April 1978, based upon our observation that confessions of judgment were typically executed by debtors with little understanding of their significance and little bargaining power to exert, a majority of this court held the California confession statutes (former Code Civ. Proc., §§ 1132-1134) constitutionally deficient for their failure to require a prejudgment determination that the debtor voluntarily, knowingly and intelligently waived his rights to notice and a hearing. (*Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 64-66 [145 Cal.Rptr. 368, 577 P.2d 188].) The Legislature has since amended Code of Civil Procedure section 1132 to allow judgment by confession only upon certification by the debtor's independent counsel that he has advised the debtor regarding his waiver of his various rights and defenses and has recommended the confession of judgment procedure. (Stats. 1979, ch. 568, § 1, p. 1795.)

Welfare and Institutions Code section 11476.1, as it existed in 1978, provided in relevant part: "In any case where the district attorney has undertaken enforcement of support, the district attorney may enter into an agreement with the noncustodial parent, on behalf of the custodial parent, a minor child, or children, for the entry of a judgment determining paternity, if applicable, and for periodic child support payments based on the noncustodial parent's reasonable ability to pay. Prior to entering into this agreement, the noncustodial parent shall be informed that a judgment will be entered based on the agreement. The clerk shall file the agreement without the payment of any fees or charges. The court shall enter judgment thereon without action."

In 1979, an appellate court invalidated an agreement executed pursuant to the foregoing provision because the agreement did not *on its face* reflect

a knowing, voluntary and intelligent waiver of the due process rights of the noncustodial parent and because the statute itself did not require a prejudgment determination of whether such a waiver had occurred. (*County of Ventura* v. *Castro* (1979) 93 Cal.App.3d 462, 469-471 [156 Cal.Rptr. 66].) Because the statute directed that judgment be entered without such a prior judicial determination, the *Castro* court held it to be constitutionally infirm under *Isbell*. (*Id.*, at pp. 472-473.)

In 1980, the Legislature responded to *Castro* by amending section 11476.1 to require either (1) a certification by the noncustodial parent's counsel that he advised his client as to his rights and that the client agreed to entry of judgment, or (2) a judicial determination by the judge before whom the proposed judgment is pending that the noncustodial parent has been advised of his due process rights and has willingly, knowingly and intelligently waived them. (Stats. 1980, ch. 682, § 1, p. 2068.)

County urges that the trial court herein, in essence, has applied *Castro* and new section 11476.1 retroactively by its determination that the judgment must be set aside for lack of a knowing and intelligent waiver by Soto of his rights to notice and a hearing. County stresses that if *Castro* is applied retroactively numerous other judgments entered pursuant to former section 11476.1, and familial relationships established in reliance thereon, would be seriously and unnecessarily disturbed.

a.) *Applicability of Isbell*

The issue of *Castro*'s retroactivity would be rendered moot if *Isbell* established a constitutional principle requiring a prejudgment waiver determination for *all* stipulated judgments. *Isbell* does contain some broad language to the effect that "[a] judgment based solely upon an executed confession is constitutionally defective because that confession is insufficient to demonstrate that the debtor has voluntarily, knowingly, and intelligently waived his due process rights." (*Isbell, supra,* 21 Cal.3d at p. 66, italics omitted.) This statement, however, was much broader than necessary to resolve the issues raised in *Isbell,* and we did not consider the very different factual setting involved here.

*Isbell* concerned the enforceability of confessions of judgment negotiated between commercial debtors and creditors, not the enforceability of child support or paternity judgments entered pursuant to former section 11476.1 of the Welfare and Institutions Code. Indeed, we carefully noted in *Isbell* that "We hold here only that sections 1132, subdivision (a), 1133, and 1134 of the Code of Civil Procedure enact an unconstitutional procedure. The validity of judgments entered pursuant to stipulation or agreement under the

authority of other statutes or rules of court is not before us in the present case, *and we do not imply that such judgments are void.*'' (21 Cal.3d at p. 75, fn. 9, italics added.)

We stressed in *Isbell* that confessions of judgment executed under former Code of Civil Procedure sections 1132 through 1134 "have not found widespread use in California." (*Id.,* at p. 74.) In contrast, County notes that (1) in its own jurisdiction alone more than *31,000* paternity or child support judgments such as the one at issue here have been entered pursuant to former section 11476.1; (2) it has collected approximately *$30 million* thereunder for the benefit of the children involved; and (3) it estimates that *$58 million* has been collected *statewide* under similar paternity and child support judgments. An amicus estimates that *80,000 judgments* were entered statewide pursuant to this section *between* the statute's enactment in *1975 and* the *Castro* decision in *1979.*

Thus, unlike the confessions of judgment considered in *Isbell,* stipulated judgments in paternity and child support cases have been widely used and relied upon by the counties on behalf of custodial parents. Even in *Isbell* we gave only *limited* retroactive effect to our decision in view of the likely payment of substantial sums of money in reliance on such judgments, as well as the confusion which would have resulted from automatically voiding such judgments. (*Ibid.*) Here the size of the sums involved, the prevalence of the agreements, the reliance on their validity, and the potential confusion which would result from calling them in question are far greater than in *Isbell.* In addition, unlike a confession of judgment in a commercial context, the stipulated child support agreements authorized by section 11476.1 of the Welfare and Institutions Code are subject to *future modification* upon a proper showing. (See Civ. Code, § 4700, subd. (a).) The availability of periodic court-ordered modification in child support cases amply distinguishes the situation in *Isbell* and affords an important due process safeguard which is unavailable to ordinary commercial debtors.

We chose in *Isbell* to make then-existing (pre-1978) confessions of judgment voidable upon a debtor's application for hearing, unless the creditor could establish the validity of the debtor's waiver of constitutional rights. (*Id.,* at p. 75.) Consequently, if *Isbell* controls here, presumably all stipulated paternity and child support judgments entered between the dates of *Isbell* and *Castro,* including the judgment at issue here, would be absolutely void, and those executed prior to *Isbell* would be voidable, depending on the evidence adduced at hearings attacking such judgments. I conclude that in light of the dire and sweeping consequences of a contrary ruling and a court's continuing opportunity to modify child support obligations based upon financial ability, the generalizations in *Isbell* suggesting that a confes-

sion of judgment is unconstitutional per se should be deemed limited to the normal commercial debtor-creditor relationships which we examined in *Isbell.*

b.) *Retroactivity of Castro*

Because I conclude that *Isbell* did not establish a constitutional principle invalidating all stipulated judgments, I next consider the retroactivity of *Castro* itself.

Although *Castro* left unresolved the issue of the retroactivity of its decision (93 Cal.App.3d at p. 474, fn. 2), this issue was subsequently decided in *County of Los Angeles* v. *Superior Court* (1981) 123 Cal.App.3d 988 [177 Cal.Rptr. 70]. After considering various approaches to the retroactivity issue, the Court of Appeal relied upon our analysis in *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226], and concluded that *Castro* should not be applied retroactively. (*County of Los Angeles, supra,* at pp. 992-993.)

In *Salas,* we determined that indigent defendants in paternity actions were entitled to legal representation, but we chose not to give our decision a retroactive effect which would invalidate earlier paternity judgments because "obligations, and, in some cases, familial relationships have been established" in reliance on those judgments. (*Salas, supra,* at p. 24.) Weighing the fairness and public policy factors affecting the retroactivity decision (see *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), the *County of Los Angeles* court concluded that, as in *Salas,* there was a strong public interest in the finality of judgments under former section 11476.1 because financial obligations and familial relationships had been established thereby. (*County of Los Angeles, supra,* at pp. 992-993.)

I agree with the foregoing reasoning. Once family relationships have been formed, fathers, mothers, and their children must be permitted to rely on the legal finality of those relationships. Only a purely prospective application of *Castro* would protect paternity judgments entered pursuant to former section 11476.1.

The majority's "voidable judgment" approach casts doubt upon thousands of paternity and support judgments and, as a practical matter, will encumber the enforcement of the underlying agreements through contempt proceedings because of invitations, as here, to challenge the validity of the judgment.

An additional unfortunate side effect of the majority's holding is that it effectively extends beyond the long established statutory six-month limitation of Code of Civil Procedure section 473 the period within which judgments may be attacked for mistake, inadvertence, surprise, or excusable neglect.

In the interest of preserving the finality of judgments and respecting the parties' reliance thereon, particularly where familial relationships have been established, I conclude that *Castro* should be applied prospectively only in paternity and child support contexts.

Mosk, J., and Kaus, J., concurred.

The petitions of both parties for a rehearing were denied March 29, 1984. Mosk, J., and Kaus, J. were of the opinion that the petitions should be granted.