[No. B008815. Second Dist., Div. One. Aug. 27, 1985.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
TRUMAN THOMPSON, Defendant and Appellant.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Leon M. Salter and John Hamilton Scott, Deputy Public Defenders, for Defendant and Appellant.

Ira Reiner, District Attorney, Donald J. Kaplan, Bradford S. Brown and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**HANSON (Thaxton), J.**—On April 12, 1984, defendant Truman Thompson moved to vacate a stipulated judgment of paternity which had been entered on February 28, 1978. The trial court denied the motion. Defendant has taken a timely appeal from the order denying relief. We reverse and remand with the direction that the trial court grant defendant's motion.

We note that plaintiff, County of Los Angeles, questions the appealability of the order made below. As was pointed out in *County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105, 110-111 [185 Cal.Rptr. 741], cert. den. (1983) 460 U.S. 1051 [75 L.Ed.2d 929, 103 S.Ct. 1497], disapproved on other grounds in *County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483, 492, footnote 4 [198 Cal.Rptr. 779, 674 P.2d 750], generally an order made after a motion to vacate a judgment is not appealable. There are a number of reasons for disallowing such appeals, including the protection thereby afforded to the one-judgment rule. (See 6 Witkin, Cal. Procedure (2d ed. 1971) § 91, pp. 4098-4099.) There are exceptions, however, and the *Tillett* court characterized a similar motion as a special order after judgment and appealable on that ground. Where a postjudgment order resolves constitutional issues concerning the judgment involved, it seems reasonable to preserve appellate review. (See *County of Los Angeles* v. *Soto, supra,* 35 Cal.3d 483.) In *County of Alameda* v. *Mosier* (1984) 154 Cal.App.3d 757, 760, footnote 4 [201 Cal.Rptr. 550], the court followed *Tillett* in holding that defendant Mosier's motion to vacate a paternity judgment resulted in an appealable order. We follow *Soto, Tillett* and *Mosier;* this appeal lies.[1]

### FACTUAL BACKGROUND

Defendant Thompson was interviewed by a deputy district attorney of Los Angeles County on November 30, 1977, concerning the paternity of two minor children who were receiving aid for families with dependent children

---

[1]As the dissenting opinion in *County of Los Angeles* v. *Soto, supra,* 35 Cal.3d at page 497 points out, "An additional unfortunate side effect of the majority's holding is that it effectively extends beyond the long established statutory six-month limitation of Code of Civil Procedure section 473 the period within which judgments may be attacked for mistake, inadvertence, surprise, or excusable neglect."

(AFDC). At that time, he signed the "Agreement for Entry of Judgment" provided for in section 11476.1 of the Welfare and Institutions Code.[2] No other circumstances surrounding this occasion have been presented to us. In support of the motion to vacate, defendant signed a declaration which appears to be a form prepared by the Los Angeles County Public Defender's office which states, in pertinent part, that "[p]rior to signing that agreement, I was not advised of my right to notice and hearing. I was not advised that I had a right to a trial on the questions of paternity and of my ability to pay child support. I was not advised of my right to counsel. I was not advised of the consequences should I fail to comply with the judgment. [¶] When I signed the agreement, I did not know I had a right to notice and hearing. I did not know I had a right to trial on the questions of paternity and of my ability to pay child support. I did not know I had a right to counsel. I did not know the consequences which might occur should I fail to comply with the judgment. [¶] In signing the agreement, I did not know I was waiving my right to notice and hearing, nor did I intend to do so. I did not know I was waiving my right to a trial, nor did I intend to do so. I did not know I was waiving my right to counsel, nor did I intend to do so. I did not know that I would be subject to incarceration should I not comply with the judgment, nor did I intend to subject myself to such penalties. [¶] If I had been advised of my rights in the foregoing regard, I would not have signed the Agreement for Entry of Judgment, but would instead have requested a hearing on the issues of paternity and my ability to pay child support, and I would have requested the appointment of counsel."

On February 28, 1978, the "Agreement" was filed in court by the Los Angeles District Attorney pursuant to Welfare and Institutions Code section

[2]That section, as it read in 1978, provided, in pertinent part, that "In any case where the district attorney has undertaken enforcement of support, the district attorney may enter into an agreement with the noncustodial parent, on behalf of the custodial parent, a minor child, or children, for the entry of a judgment determining paternity, if applicable, and for periodic child support payments based on the noncustodial parent's reasonable ability to pay. Prior to entering into this agreement, the noncustodial parent shall be informed that a judgment will be entered based on the agreement. The clerk shall file the agreement without the payment of any fees or charges. The court shall enter judgment thereon without action."

As amended in 1980 (Stats. 1980, ch. 682, § 1, p. 2068, and by Stats. 1981-1982, First Ex. Sess., ch. 3, § 35, p. 6907, section 11476.1 now provides, in pertinent part, that "(b) A judgment based on the agreement shall be entered only if one of the following requirements is satisfied: [¶] (1) The noncustodial parent is represented by legal counsel and the attorney signs a certificate stating: 'I have examined the proposed judgment and have advised my client concerning his or her rights in connection with this matter and the consequences of signing or not signing the agreement for the entry of the judgment and my client, after being so advised, has agreed to the entry of the judgment. [¶] (2) A judge of the court in which the judgment is to be entered, after advising the noncustodial parent concerning his or her rights in connection with the matter and the consequences of agreeing or not agreeing to the entry of the judgment, makes a finding that the noncustodial parent has appeared before the judge and the judge has determined that under the circumstances of the particular case the noncustodial parent has willingly, knowingly, and intelligently waived his or her due process rights in agreeing to the entry of the judgment.' "

11476.1. In it defendant had stipulated that he was the father of Tackescha Charmain Thompson, born June 5, 1974, and Miracle Domellin Thompson, born October 11, 1977, and would pay child support of $50 per month per child for a total of $100 per month, to be paid through the court trustee. The stipulation became the order of the court the same day.

Approximately three years later, on April 13, 1981, the Los Angeles District Attorney filed an "Order to Show Cause and Declaration In re Contempt," alleging that the amount of child support which had accrued pursuant to the judgment was $3,150, of which $1,699.02 had been paid, leaving delinquent the sum of $1,450.98. Attached to the citation for the contempt was the following notice: "The Judgment which is the basis for the attached citation was obtained by Agreement for Entry of Judgment, pursuant to Welfare & Institutions Code Section 11476.1. This statute was held unconstitutional in the case of *Ventura County* v. *Rudy Castro* (1979) 93 CA 3rd 462. [¶] Because of this Appellate Court decision you may have certain legal rights with regard to this Judgment that has been entered against you. You may want to consult an attorney. If you cannot afford an attorney, you may be entitled to the services of the Public Defender without any charge to you."

On June 5, 1981, defendant Thompson appeared in court and was referred to the Los Angeles County Public Defender, and the matter was continued to June 26, 1981. Thereafter, there were a series of continuances, finally culminating in a hearing on February 4, 1982, at which time defendant was present represented by a deputy public defender. On that occasion, defendant entered a plea of guilty to counts 5 through 13 of the contempt citation which charged him with failure to comply with the February 28, 1978 judgment. The record before us discloses that defendant was advised of his constitutional rights in connection with his plea, and personally waived those rights. The matter was continued to May 5, 1982, for sentencing. Thereafter, the record reflects that defendant obtained continuance after continuance of the matter until April 12, 1984, when he filed his motion to vacate the judgment due to the recently announced holding by the California Supreme Court in *County of Los Angeles* v. *Soto, supra,* 35 Cal.3d 483, decided January 30, 1984, with petitions for rehearing denied on March 29, 1984.

In his declaration in support of the motion to vacate the judgment, defendant states that. "I waited since March 31, 1983, for the California Supreme Court to resolve the invalidity of the agreement similar to the one I signed before filing this motion. *The District Attorney agreed to that delay.*" (Italics added.)

At the September 6, 1984, hearing on defendant's motion, plaintiff county submitted moving papers which contended that (1) defendant had, by pleading guilty to the contempt charges, waived his right to challenge the validity of the judgment entered against him and (2) that defendant had not shown "due diligence" in pursuing his legal remedies. The trial court denied defendant's motion on the ground that the *Soto* decision had not addressed the situation where a defendant had pled guilty to a contempt citation during the pendency of *Soto,* and had in fact entered his plea at a time when he was represented by a public defender. It was reasoned that this conduct by the defendant distinguished his situation from other defendants who had stipulated to paternity judgments prior to the *Castro* decision of 1979, and in effect barred defendant from challenging the "pre-*Castro*" judgment entered as to him.

## Issues on Appeal

Plaintiff argues here, as it did below, that (1) defendant waived his right to challenge the paternity judgment by his plea of guilty and (2) that defendant had not demonstrated diligence in seeking relief from the judgment entered approximately six years prior to his motion.

## Discussion

We commence with a reprise of the progression of events concerning the stipulated paternity judgment procedure set forth in Welfare and Institutions Code section 11476.1. In *County of Ventura* v. *Castro* (1979) 93 Cal.App.3d 462 [156 Cal.Rptr. 66], the court declared the statute to be constitutionally defective because it "makes no provision for protection of the due process rights of the noncustodial parent, nor does it address the issue of the manner in which defendant shall be permitted to waive those rights." (*Id.,* at p. 469.) The *Castro* opinion observed that "[g]laringly absent from the [statute] is any requirement that the defendant be informed that he has a right to trial on the issues of paternity and his obligation to support the minor child." (*Id.,* at pp. 469-470.) It also reiterated the well-established principle that the waiver of constitutional rights, in that case to notice and hearing, "is never presumed." (*Id.,* at p. 470.) Thus, the denial of defendant's motion to vacate the judgment was reversed, with the direction to enter an order granting it. In a final footnote, the *Castro* court declined "on these facts to address the issue of retroactivity." (*Id.,* at p. 474, fn. 2.) Hearing by the Supreme Court was denied July 19, 1979.

There the matter rested until 1981, when the Court of Appeal issued a writ of mandate directing the trial courts [in four different proceedings] to vacate orders vacating paternity and support judgments entered into prior

to the *Castro* decision. In *County of Los Angeles* v. *Superior Court* (1981) 123 Cal.App.3d 988 [177 Cal.Rptr. 70], it was declared that "[t]here is a strong public interest in the finality of such judgments" (*id.,* at p. 993) and it was noted that *Castro* had cast doubt on the validity of an estimated 80,000 judgments statewide which had been entered pursuant to section 11476.1 prior to *Castro;* that millions of dollars had been collected by governmental agencies pursuant to the stipulated judgment procedure of section 11476.1 as it read prior to *Castro.* (*Id.,* at p. 992.) In denying retroactive effect to *Castro,* the court relied upon *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 593 P.2d 226], a California Supreme Court case holding that when the government seeks to establish a defendant's paternity and enforce the child support obligation which accompanies such status, an indigent defendant is entitled to the appointment of counsel to represent him. The *Salas* court, however, declined to make the holding retroactive as to judgments of paternity already final, on the ground that to do so might, in some cases, disrupt familial relationships already established. [Petition for hearing on the *Los Angeles County* writ matter in the Supreme Court was denied November 27, 1981.]

In 1982, the Court of Appeal determined, in *County of Ventura* v. *Tillett, supra,* 133 Cal.App.3d 105, that a stipulated judgment for the reimbursement of welfare funds expended on minor children and continued support of said children, entered pursuant to Welfare and Institutions Code section 11350, was void because the defendant mother therein had not voluntarily, knowingly and intelligently entered into the stipulation giving rise to the judgment, thereby waiving her right to counsel and to trial on the issue of her obligation to her children. In *Tillett,* prior to the motion to vacate the stipulated judgment, defendant had appeared in propria persona and had entered a plea of guilty to charges of contempt for not complying with the stipulated judgment. The *Tillett* court reversed the trial court's order refusing to vacate the judgment and returned the matter for further hearing on the issue of child support; defendant, if indigent, was to be represented by appointed counsel. Petition for hearing in the Supreme Court was denied September 22, 1982.

In 1984, the California Supreme Court considered the "status of an agreement for entry of judgment executed in conformity with section 11476.1 prior to *Castro.*" (*County of Los Angeles* v. *Soto, supra,* 35 Cal.3d 483, 486.) The majority decided that "pre-*Castro*" paternity and support judgments were voidable, if a defendant established "that he was, in fact, unaware of the consequences of the agreement or of the fact that he waived his rights by executing the agreement, and that he would not have executed the agreement had he been aware of these matters. Only then must the judgment be set aside because the agreement on which it is based was not voluntary

and intelligent in the constitutional sense. If the defendant establishes the involuntary nature of the agreement in this manner, and satisfies the court that he has been diligent in his efforts to set aside the judgment, the court must grant a motion to set aside the judgment. [Citation.] These judgments are voidable, but they are not void. [Fn. omitted.]" (*Id.*, at p. 492.) The court disapproved the characterization in *Tillett* that such judgments were void. It acknowledged the rationale upon which it had denied retroactivity in *Salas* v. *Cortez, supra,* but stated that "[e]ven the stability of family relationships, however, cannot outweigh the defendant's right to set aside a judgment entered on the basis of an involuntary waiver of the right to any hearing on the question of paternity." (*Id.*, at p. 492, fn. 4.)

Since *Soto,* the Courts of Appeal have considered motions to vacate paternity and support judgments asserted to be constitutionally infirm with varying results. (See, e.g., *County of Alameda* v. *Mosier, supra,* 154 Cal.App.3d 757 and *County of Los Angeles* v. *Castro* (1984) 160 Cal.App.3d 899 [207 Cal.Rptr. 15].) The action of the Legislature in 1980 amending section 11476.1 has, of course, stemmed the tide of reconsideration somewhat by the inclusion of due process protection to defendants in the amended statute. We consider now the pre-*Castro* judgment in question on this appeal, and address the contentions made in support of the trial court's refusal to vacate the judgment.

## I.

Plaintiff County contends that defendant Thompson should be precluded from challenging the stipulated judgment because of his guilty plea to the contempt charges in 1982. In the instant case, defendant, advised by his public defender, assertedly entered his plea with awareness of the Los Angeles District Attorney's "policy" not to ask for jail time if defendant entered a plea of guilty. As to the then-possibility of challenging the judgment, the Court of Appeal had declined to hold *Castro* retroactive and the petition to the Supreme Court had been denied. [*Soto* was progressing toward decision by our high court, but the ultimate outcome of pre-*Castro* judgments was subject to speculation.] The difficulties inherent in giving sound legal advice to defendants who had stipulated to paternity in the pre-*Castro* era is obvious.

The form declaration signed and submitted by defendant to the court below recites (1) his lack of advisement of his rights; (2) his lack of actual knowledge of his rights; and (3) his lack of "waiver" of his rights in connection with the stipulated judgment. While form declarations are not as persuasive as a more personally fashioned document, the form declaration is probably a commentary on the multiplicity of pre-*Castro* defendants. Nei-

ther in the moving papers of plaintiff county nor during argument at the hearing on the motion was there any challenge of defendant's assertions of ignorance; consequently, we accept them as true.

The principal argument offered at hearing by the county was that defendant's guilty plea constituted an all-encompassing waiver, and the record shows that the trial court denied the motion to vacate on this ground. On appeal, plaintiff county cites *People* v. *Barton* (1971) 19 Cal.App.3d 990 [97 Cal.Rptr. 329] and *People* v. *Grand* (1971) 16 Cal.App.3d 27 [93 Cal.Rptr. 658] for the proposition that a defendant who pleads guilty to a charge may not later avoid the consequences by mounting constitutional attack on his conviction due to a subsequent change in the law.

Interestingly enough, the California Supreme·Court in *Soto, supra,* 35 Cal.3d 483, found an analogy between the consequences of an adjudication of paternity and the consequences "flowing from a judgment of conviction of a criminal offense." (*Id.,* at p. 489.) It is stated that "[i]n a criminal proceeding the entry of a guilty plea is more than a confession. It is itself a conviction leaving nothing to be done but give judgment and determine punishment. [Citation.] That consequence demands a showing on the record that the plea is voluntary and not the product of 'ignorance, incomprehension, coercion, terror, inducements [or] subtle or blatant threats,' and that the guilty pleading defendant knowingly waived the constitutional rights to which he is entitled in a criminal trial. [Citations.]" (*Ibid.*) Indeed, in the case at bench, our record shows that defendant did waive his constitutional rights relative to his guilty plea. Plaintiff county's argument seems to be that the waiver which appears on the record with reference to the guilty plea erases or ratifies the prior assertedly unknowledgable acquiescence of defendant to the stipulated judgment procedure. We are not told how a defendant can waive a "right" which had not, at the time of the asserted waiver, been articulated by our state's highest court.

While *Soto* did not address the question of an intervening plea of guilty, we interpret the majority opinion to hold that the crucial *inquiry* into a pre-*Castro* defendant's advisement and waiver of his rights concerning the stipulated judgment—upon which the contempt charges necessarily rest—necessarily focuses on defendant's state of mind *at the time he entered into the stipulation,* rather than at some subsequent time when incarceration was imminent. As has been previously stated, waiver is not presumed. Given the uncertain status of the law at the time of defendant's plea, an uncertainty directed toward the *very* judgment upon which plaintiff county was relying in prosecuting defendant, we will not base our rulings on the competing legal strategies apparent on the trial level in the case at bench. Since the state Supreme Court has determined that pre-*Castro* judgments are voidable,

and may be challenged as set forth in that opinion, we are compelled to follow that ruling as we understand it. Since defendant's declaration met the requirements of *Soto,* the trial court's determination to deny him relief must be vacated unless the third prong of *Soto,* requiring a defendant to demonstrate "that he has been diligent in his efforts to set aside the judgment" has not been met in this case.

## II.

In *Castro, supra,* 93 Cal.App.3d 462, defendant made his motion to vacate within the six-month period provided in Code of Civil Procedure section 473. In *Tillett, supra,* 133 Cal.App.3d 105, due diligence was found in the fact that the defendant promptly challenged the judgment after she was cited for contempt in failing to comply with it. In *Mosier, supra,* 154 Cal.App.3d 757, defendant filed a motion in 1982 to vacate a judgment entered some four years earlier, in 1978.[3] In *Soto, supra,* 35 Cal.3d 483, the defendant moved to vacate the judgment two years after entry, after being cited for contempt. ■ In the case at bench, defendant Thompson filed his motion in 1984, six years after the judgment had been entered in 1978.

The record shows that he was cited for contempt in 1981 but did not appear in court to answer the charges until 1982, when he appeared with counsel. In his declaration, defendant declares that the district attorney agreed to wait for the *Soto* decision before proceeding further against defendant after his guilty plea was a matter of record. Probation and sentencing proceedings were continued throughout 1982 and 1983, and had not been completed when defendant made his motion to vacate on April 12, 1984, within days of the finality of the *Soto* decision. Neither in its moving papers nor at the hearing nor on this appeal does the plaintiff county directly deny that it entered into some type of understanding with defendant; the record shows that defendant obtained continuances over and over again with apparently no protest from the district attorney. The trial court, in denying the motion to vacate, did not do so on the issue of "due diligence."

The *Soto* majority, in requiring a defendant to show "due diligence" in seeking vacation of a stipulated judgment entered into in the pre-*Castro* era, prior to 1979, must have known that there would be cases where a defendant's motion would be made long after the questionable judgment was en-

---

[3]In *Mosier, supra,* 154 Cal.App.3d at page 760, footnote 3, it is stated that with respect to the timeliness of making a motion to vacate the judgment, "there was no applicable statute of limitations; the only time limit on the motion was that it was required to be made within a reasonable time, the determination of which was wholly within the court's discretion. [Citations.]"

tered. If "due diligence" as used in *Soto* meant that the trial courts could reject motions made after *Soto* on that ground and could only regard as "diligent" motions *pending* while *Soto* was being decided, we think the *Soto* opinion would have said so; there would be very little benefit afforded "pre-*Castro*" defendants by the majority determination of retroactivity under certain specified conditions, if only pending motions were affected. We are persuaded that the "due diligence" to which the court referred was prospective in nature, that is, contemplated that motions to vacate pre-*Castro* judgments would have to be brought by the defendants affected within a reasonable time after *Soto* became final. This defendant Thompson did. In any event, we would be reluctant to accept plaintiff county's argument that defendant has not been diligent under the circumstances of this case, where it appears that defendant was allowed to avoid the consequences of his guilty plea for over two years of the six-year period with the tacit cooperation of the county. We therefore hold that defendant has satisfied the *Soto* "due diligence" requirement.

### DISPOSITION

The order (judgment) is reversed and remanded; the trial court is directed to grant defendant's motion to vacate the 1978 judgment.

Spencer, P. J., and Lucas, J., concurred.