[No. C007363. Third Dist. Sept. 23, 1991.]

COUNTY OF SUTTER, Plaintiff and Respondent, v.
DAVEY DARRELL DAVIS, Defendant and Appellant.

## COUNSEL

Justin B. Scott for Defendant and Appellant.

John K. Van de Kamp and Daniel Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, J.**—On behalf of Andrea E. and Joshua E., minors, the County of Sutter (County) filed this action against defendant Davey Darrell Davis to

establish paternity and obtain child support and reimbursement for public assistance. (Civ. Code, § 248; Welf. & Inst. Code, §§ 11350, 11350.1, 11475.1; all further references to undesignated statutory sections are to the Welfare and Institutions Code.) Defendant denied paternity and requested a jury trial on the issue. He also stipulated to a blood test and the appointment of a blood test expert. County challenged defendant's request for jury trial. The trial court concluded there is no right to a jury trial in a paternity action in California, whether by state or federal constitutional mandate or by statute. In a bench trial, Defendant's paternity was established. He thereafter stipulated to amounts for reimbursement and support, and judgment was entered on the stipulation.

This appeal presents two questions of law regarding the California Constitution: First, does a defendant in a paternity action have a right to a jury trial under article I, section 16 (the general provision regarding right to jury trial); and secondly, does a defendant in such an action have a right to a jury trial under article I, section 7, subdivision (a), (the due process clause). We answer no to both questions. Consequently, we affirm the judgment.

DISCUSSION

1. *Article I, section 16*

Article I, section 16 of the California Constitution (hereafter article 1, section 16) provides in pertinent part that "Trial by jury is an inviolate right and shall be secured to all . . . ." Article I, section 16 was adopted in 1974 but its predecessors—article I, section 3 of our original Constitution, adopted in 1850, and article I, section 7 adopted in 1879—contain the same substantive language.

 Unfortunately for defendant, this court has already determined that article I, section 16 does not provide him with a right to a jury trial in a paternity action brought under section 11350. (*County of El Dorado* v. *Schneider* (1987) 191 Cal.App.3d 1263, 1266, 1278-1281 [237 Cal.Rptr. 51].) This is because "[t]he right to trial by jury guaranteed by the [California] Constitution is the right as it existed at common law at the time the Constitution was adopted. [Citation.] . . . The common law respecting trial by jury as it existed in 1850 is the rule of decision in this state. [Citation.]. . . It is the right to trial by jury as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact." (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832].) "The common law at the time the Constitution was adopted includes not only the *lex non scripta* but also the written statutes enacted by

Parliament. [Citation.]" (*Id.* at p. 287; see County of *El Dorado* v. *Schneider, supra*, 191 Cal.App.3d at p. 1278.)

■ In *Schneider*, we concluded "that since the common law in its statutory aspect in 1850 provided an action to establish paternity, and since there was then no right to a jury trial on the question, defendant had no right to a jury under article I, section 16, of our Constitution. [Citations.]" (191 Cal.App.3d at p. 1280; see also, *County of Butte* v. *Superior Court* (1989) 210 Cal.App.3d 555, 557-558 [258 Cal.Rptr. 516].)

On three grounds, defendant contends *Schneider* was wrongly decided. First, defendant notes that California decisional law in 1974—when article I, section 16 was adopted—provided for a right to jury trial in paternity actions. Secondly, defendant asserts that American common law at the time the California Constitution was adopted specified that a defendant in a paternity action was entitled to a jury trial. Finally, defendant argues that an action for reimbursement of public assistance did not exist at common law and since such an action is one at law, article I, section 16 applies to provide a right to jury trial.

Defendant's first two points are riddled with problems. Initially, defendant ignores the constitutional provisions that preceded article I, section 16, all of which have the same substantive language. (Art. I, § 3 adopted in 1850; art. I, § 7 adopted in 1879.) He also mischaracterizes American common law: The vast majority of American state courts that have considered the issue using the time period around 1850 have held that a general state constitutional guaranty of the right to a jury trial does not extend to paternity actions. (Annot., Paternity Proceedings: Right to Jury Trial (1987) 51 A.L.R.4th 565, 569-570, 573-576.)[1] Finally, he relies on three California decisions—*Van Buskirk* v. *Todd* (1969) 269 Cal.App.2d 680, 685-686 [75 Cal.Rptr. 280]; *Kyne* v. *Kyne* (1940) 38 Cal.App.2d 122, 133 [100 P.2d 806]; and *Myers* v. *Harrington* (1925) 70 Cal.App. 680, 689 [234 P. 412]—that do not articulate the legal basis of the jury trial right in a paternity action other than to note the action's legal nature. (See *County of El Dorado* v. *Schneider, supra*, 191 Cal.App.3d at p. 1281.) These decisions are incomplete in light of *People* v. *One 1941 Chevrolet Coupe, supra*, 37 Cal.2d at pages 286-287. *People* v. *One 1941 Chevrolet Coupe* formed the basis of the *Schneider* decision on this

---

[1] In this respect, defendant argues that *Schneider* relied primarily on an American Law Reports annotation—which has been superseded—for the proposition that no other American state has found a state constitutional right to jury trial in a paternity action. (See Annot., Right to Jury Trial in Bastardy Proceedings (1964) 94 A.L.R.2d 1128; superseded by Annot., Paternity Proceedings: Right to Jury Trial, *supra*, 51 A.L.R.4th 565.) Defendant is mistaken. The *Schneider* court expressly did not rely on the superseded American Law Reports annotation. Instead, *Schneider* "reach[ed] the same conclusion by a different route": the route provided in *People* v. *One 1941 Chevrolet Coupe*. (191 Cal.App.3d at pp. 1278-1281.)

issue but was not even mentioned in *Van Buskirk* (*Kyne* and *Myers* were decided before *People* v. *One 1941 Chevrolet Coupe*). As explained in *Crouchman* v. *Superior Court* (1988) 45 Cal.3d 1167, 1174 [248 Cal.Rptr. 626, 755 P.2d 1075]: " 'As a general proposition, "[T]he jury trial is a matter of right in a civil action at law, but not in equity." . . .' [Citation.] But if a proceeding otherwise identifiable in some sense as a "civil action at law" did not entail a right to jury trial under the [English] common law of 1850, then the modern California counterpart of that proceeding will not entail a *constitutional* right to trial by jury." (Italics in original.)

Defendant's last point about public reimbursement actions not existing at common law is also off the mark. The essential issues in paternity actions have remained the same since the common law in 1850: to decide paternity and set child support. Public reimbursement suits under the Welfare and Institutions Code comprise these same two essential issues, and therefore have not changed the nature of the paternity action.

That brings us to the real problem with defendant's contention that *Schneider* was wrongly decided. Defendant refuses to recognize that "[t]he right to a jury trial under article I, section 16 of the California Constitution is measured by the common law of *England* as it existed at the time of the adoption of the California Constitution in 1850." (*County of Butte* v. *Superior Court, supra,* 210 Cal.App.3d at p. 557, italics added [discussing *Schneider* and citing *People* v. *One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at pp. 286-287, and *Crouchman* v. *Superior Court, supra,* 45 Cal.3d at p. 1173].) Consequently, defendant's reliance on certain court decisions from California and other American states is misplaced because these decisions do not set forth the common law of England as it existed in 1850.

Article I, section 16 does not provide defendant with a right to a jury trial.

2. *Article I,, section 7, subdivision (a)*

Article I, section 7, subdivision (a) of the California Constitution (hereafter, article I, section 7(a)) provides in pertinent part: "A person may not be deprived of life, liberty, or property without due process of law . . . ."[2]

■ It is true, as noted by this court, that "rules governing invocation of procedural due process rights under the state Constitution are not always the same as rules adopted by the United States Supreme Court for invocation of

---

[2]Article I, section 15, of the California Constitution, applicable in criminal cases, provides that persons may not "be deprived of life, liberty, or property without due process of law."

federal due process rights." (*Schultz* v. *Regents of University of California* (1984) 160 Cal.App.3d 768, 780 [206 Cal.Rptr. 910].)

It is also true that the California Supreme Court, on occasion, has concluded that article I, section 7(a) requires a trial by jury in certain civil proceedings. (See, e.g., *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235 [152 Cal.Rptr. 424, 590 P.2d 1]; *People* v. *Smith* (1971) 5 Cal.3d 313, 317 [96 Cal.Rptr. 13, 486 P.2d 1213]; *In re Gary W.* (1971) 5 Cal.3d 296, 307 [96 Cal.Rptr. 1, 486 P.2d 1201]; see also *People* v. *Thomas* (1977) 19 Cal.3d 630, 632-633 [139 Cal.Rptr. 594, 566 P.2d 228]; *People* v. *Feagley* (1975) 14 Cal.3d 338, 349-358 [121 Cal.Rptr. 509, 535 P.2d 373]; *People* v. *Burnick* (1975) 14 Cal.3d 306, 310 [121 Cal.Rptr. 488, 535 P.2d 352].)

Relying on language from *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226] and *County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483 [198 Cal.Rptr. 779, 674 P.2d 750], Defendant contends that a paternity action falls within the rubric of these exceptional cases where the state due process clause mandates a right to a jury trial. We disagree.

In *Salas*, our high court in a four-to-three decision held that indigent defendants in paternity proceedings prosecuted by the state are entitled to appointed counsel under article I, section 7(a). *Salas* explained: "The touchstone of due process is fundamental fairness. Whether due process requires the appointment of counsel in a particular case depends on the interests involved and the nature of the proceedings. [Citations.] To determine the weight of appellants' claims to appointed counsel in the present cases, this court must examine the nature and magnitude of the interests involved, the possible consequences appellants face and the features which distinguish paternity proceedings from other civil proceedings. These factors must then be balanced against the state's interests." (24 Cal.3d at p. 27.)

In applying this balancing test, the *Salas* court first noted that paternity actions involve more than monetary judgments. (24 Cal.3d at p. 27.) At stake is the establishment of the most basic biological relationship, that of parent and child. (*Id.* at pp. 27-28.) A determination of paternity has "grave implications" for the alleged father, the child, the mother and the state. (*Id.* at p. 28.)

*Salas* continued: "An adjudication of paternity may profoundly affect a person's life. It may disrupt an established family and damage reputations. Further, a court's determination of paternity exposes a defendant to deprivation of property and, potentially, liberty. It entails the obligation to support and educate a child (Civ. Code, §§ 196a, 7012), an obligation that does not

end at the child's age of majority. (Civ. Code, § 206.) [Fn. omitted.] Moreover, a child support order is more freely enforceable by garnishment than an ordinary civil judgment (15 U.S.C. § 1673(b)(1); Int. Rev. Code, § 6103(*l*)(6); Code Civ. Proc., § 690.6), and is not dischargeable in bankruptcy (11 U.S.C. § 35(a)(7)). Also, the failure to pay child support may be enforced through the civil contempt power (Civ. Code, § 7012), as well as the Uniform Civil Liability Act (Civ. Code, § 241 et seq.) and interstate assistance statutes (42 U.S.C. §§ 651-655; Code Civ. Proc., § 1650 et seq.). A judgment of paternity, even if taken by default, is res judicata in any subsequent civil enforcement proceeding. (Civ. Code, § 7010, subd. (a).) [¶] Failure to support a child may also be prosecuted criminally. (Pen. Code, § 270.) [Fn. omitted.] While an indigent is entitled to counsel if prosecuted criminally for nonsupport, the most significant element of the offense—paternity—may have already been determined in a civil proceeding in which the defendant was unrepresented by counsel. The prior civil judgment is admissible in criminal proceedings for nonsupport. (Pen. Code, § 270e.) [Fn. omitted.]" (24 Cal.3d at pp. 28-29.)

Important interests of the child are implicated in paternity actions, said *Salas.* "Any determination that a particular individual is a child's biological father may have profound sociological and psychological ramifications. Further, the child's rights of support and inheritance against the father are at issue, as well as his or her future obligation to support the father. (Civ. Code, § 206.)" (24 Cal.3d at p. 33.)

Finally, the court in *Salas* noted the increased state intervention in paternity proceedings through public assistance reimbursement statutes like section 11350 et seq., and the fact that the mother and child are afforded counsel in prosecuting such an action. (24 Cal.3d at p. 31.) Unlike other civil actions, said the *Salas* court, in paternity actions against indigent defendants "the full power of the state is pitted against an indigent person in an adjudication of the existence of a fundamental biological relationship entailing serious financial, legal and moral obligations." (*Id.* at p. 32.) Under these circumstances, the fact-finding process must be accurate and appointment of defense counsel will enhance accuracy. (*Id.* at pp. 32-33.)

Against these interests, consequences and features, said *Salas,* stands the state's interest in denying counsel to indigent paternity defendants, an interest that is largely financial and offset by the state's interest in accurate fact-finding. (24 Cal.3d at p. 33.) For these reasons, *Salas* concluded, appointed counsel for indigent defendants is required under article I, section 7(a) for paternity actions in which the state appears either as a party or on behalf of a mother or child. (*Id.* at p. 34.)

The dissent in *Salas* asked rhetorically "what *familial* interest is being served by furnishing free counsel to a defendant who is fighting *against* the

establishment of a paternal relationship?" (24 Cal.3d at p. 41, italics in original.) The dissent continued: "It seems self-evident that the central issue in paternity suits is neither the establishment or maintenance of the family unit nor the parent's bond with the child. What is at stake is money. The state wishes to place the financial responsibility for support of the child on a legally responsible adult. It is only this financial obligation that can be imposed. The state cannot, despite the majority's allusion to 'moral' obligations, order a man to act as a father; it can only designate him as such." (*Id.* at p. 41.)

In *Soto*, the California Supreme Court held that a defendant who stipulates to a paternity judgment must understand the consequences of that judgment and be aware of his right to a hearing at which the county is required to prove paternity and at which he may present a defense with the assistance of counsel. (35 Cal.3d at p. 490.) Referring to the interests and consequences set forth in *Salas*, the court in *Soto* stated: "We cannot, consistent with this recognition of the consequences of a paternity judgment, uphold judgments entered pursuant to agreements . . . if the defendant was not aware of those consequences and did not knowingly and intelligently waive his right to a judicial hearing. [¶] The grave consequences attendant upon an adjudication of paternity are analogous to those flowing from a judgment of conviction of a criminal offense. The entry of a judgment of paternity demands equivalent protections against involuntary or unintelligent waiver by a defendant of his right to trial." (*Id.* at p. 489.)

Defendant argues that the "grave consequences" recognized in *Salas* and *Soto* compel the conclusion that paternity actions are akin to those actions in which a right to a jury trial is mandated by the state due process clause. We are unpersuaded.

■ Our analysis is guided by the principle set forth in *Salas* that we "must examine the nature and magnitude of the interests involved, the possible consequences [defendant] face[s] and the features which distinguish paternity proceedings from other civil proceedings. These factors must then be balanced against the state's interests" keeping in mind that the "touchstone of due process is fundamental fairness." (24 Cal.3d at p. 27; see also *People v. Ramirez* (1979) 25 Cal.3d 260, 268-269 [158 Cal.Rptr. 316, 599 P.2d 622].)

■ All of the cases in which a right to a jury trial has been found by the California Supreme Court to be mandated by the state due process clause have involved the fundamental interests of a person's dignity and liberty. (See e.g., *People v. Smith, supra,* 5 Cal.3d at p. 317 [due process requires jury trial in proceedings to extend commitment to California Youth Author-

ity]; *In re Gary W., supra,* 5 Cal.3d at p. 307 [same]; *Conservatorship of Roulet, supra,* 23 Cal.3d at p. 235 [due process requires unanimous jury verdict in "gravely disabled" civil commitment conservatorship proceedings under Lanterman-Petris-Short Act]; see also *People* v. *Burnick, supra,* 14 Cal.3d at pp. 310, 319-322 [due process requires proof beyond a reasonable doubt in "mentally disordered sex offender" civil commitment proceedings]; *People* v. *Feagley, supra,* 14 Cal.3d at p. 351 [due process requires unanimous jury in "mentally disordered sex offender" civil commitment proceedings]; *People* v. *Thomas, supra,* 19 Cal.3d at pp. 633, 644 [due process requires unanimous jury and proof beyond a reasonable doubt in "narcotics addict" civil commitment proceedings].) Moreover, the theoretical maximum period of involuntary commitment in these cases ranged from 10 years (*People* v. *Thomas, supra,* at p. 639) to life (*In re Gary W., supra,* at p. 300; *People* v. *Feagley, supra,* at p. 342; *Conservatorship of Roulet, supra,* at p. 224).

The interests and consequences implicated in a paternity action are not as great as the interests and consequences implicated in these civil proceedings. Undoubtedly, there is a strong social stigma attached to a father who is able to but who refuses to support his children. And no doubt a paternity determination may disrupt an established family. But this stigma interferes significantly less with a person's life than does a governmental determination that a person is "gravely disabled" or a particular "narcotics addict" or a "mentally disordered sex offender" who must be involuntarily confined for his or her own good.

The interest of personal liberty highlights the real distinction between a paternity action and those civil actions mandating a due process right to jury trial. A direct consequence of being adjudicated "gravely disabled" or a qualifying "narcotics addict" or a "mentally disordered sex offender" is an involuntary commitment, in some cases theoretically for *life.* As noted in *Schneider,* "the only direct consequence of an adjudication of paternity is an obligation to pay money." (191 Cal.App.3d at p. 1270.)

It is true that if a defendant fails to comply with a support order arising from a paternity determination, he may be criminally prosecuted for willful nonsupport. (Pen. Code, § 270.) In such an action, moreover, the civil adjudication of paternity would be admissible as evidence. (Pen. Code, § 270e.) But in that criminal action the defendant would be entitled to a jury trial. And the adjudication of paternity would not be given res judicata or collateral estoppel effect, because a higher burden of proof applies in criminal actions (proof beyond a reasonable doubt) than in paternity actions (proof by a preponderance of the evidence). (See *County of El Dorado* v. *Schneider, supra,* 191 Cal.App.3d at p. 1270.)

It is also true the *Soto* court found that the "grave consequences attendant upon an adjudication of paternity are analogous to those flowing from a judgment of conviction of a criminal offense." (35 Cal.3d at p. 489.) But, as *Schneider* noted, the *Soto* court did not find the two proceedings equivalent in all respects. (191 Cal.App.3d at p. 1270.) Nor did *Soto* suggest or imply a trial by jury was constitutionally required. (*Ibid.*) In fact, *Soto* did just the opposite; the opinion carefully avoided using language like "right to jury trial," instead noting that a defendant must knowingly waive his right to "trial" or "judicial hearing." (35 Cal.3d at pp. 486, 489.) This careful use of language is also evident in *County of Ventura* v. *Castro* (1979) 93 Cal.App.3d 462 [156 Cal.Rptr. 66], a case approved of in *Soto.* (35 Cal.3d at p. 489.)

In *Castro*, the court held that section 11476.1, authorizing stipulated paternity judgments, was unconstitutional because it failed to provide for the notice and hearing required by due process, and made no provision for waiver of those rights by the defendant. (93 Cal.App.3d at pp. 467-470; see *County of Los Angeles* v. *Soto, supra*, 35 Cal.3d at pp. 485-486.) (*Soto* concerned the status of a stipulated paternity judgment executed in conformity with section 11476.1 prior to *Castro.* (35 Cal.3d at p. 486.).) In *Castro*, the defendant claimed he did not realize he was waiving his "*right to trial by jury* on the issue of paternity" when he stipulated to the judgment. (93 Cal.App.3d at p. 467, italics added.) Pointedly, the *Castro* court noted that "[g]laringly absent" from (former) section 11476.1 was any requirement that the defendant be informed that he has a "*right to trial*" on the issue of paternity. (93 Cal.App.3d at pp. 469-470, italics added.)

Furthermore, as noted in *Schneider*, the analogy between a paternity action and a criminal action cannot be carried too far because there are significant differences between the two proceedings. (191 Cal.App.3d at p. 1270.) As explained earlier, the standards of proof in the two actions are different. More significantly, the nature of the two proceedings is different. In contrast to a criminal action, the purpose of a paternity action is not to punish the defendant. (*Id.* at p. 1270.) The purpose of a paternity action is to secure child support and relieve the public of that burden. (*Ibid.*) In a paternity action, the defendant is not subjected to any penal sanction. (*Ibid.*) As *Schneider* noted, "[m]odern cases from other jurisdictions have uniformly concluded paternity actions are essentially civil in character, where no direct penal consequences attach to a finding of paternity. [Citations.]" (*Id.* at p. 1271.)

California's provision of certain procedural rights, such as the right to counsel provided by *Salas*, does not transform the paternity action into an action criminal in nature. (*County of El Dorado* v. *Schneider, supra*, 191

Cal.App.3d at p. 1263.) The " 'decision . . . to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there. [Citation.]' (*Allen* v. *Illinois* (1986) 478 U.S. 364, 372 [92 L.Ed.2d 296, 306, 106 S.Ct. 2988].)" (*Id.* at p. 1271.)

Another important concern in the due process equation is the accuracy of the factfinding mechanism. (*Salas* v. *Cortez, supra,* 24 Cal.3d at pp. 31-34; see also *People* v. *Ramirez, supra,* 25 Cal.3d at p. 269.) In *Salas* the court noted that a judgment rendered in a paternity proceeding where only the plaintiff has the assistance of counsel "is not only unfair, it is unreliable." (24 Cal.3d at p. 31.) This conclusion is sound in the context of fundamental fairness. Where a defendant contests paternity, the paternity proceeding is an adversarial one. An adversarial proceeding is unfair and may be unreliable if only one side has the right to an attorney.

The situation is different, however, concerning the right to a jury trial. If the defendant in a paternity action does not have such a right, neither does the plaintiff. (See Annot., Paternity Proceedings: Right to Jury Trial, *supra,* 51 A.L.R.4th at pp. 574-575.) Both sides present their case to a judge, who is sworn to impartiality just like a jury. Unlike the situation in *Salas,* this situation does not give one side an advantage. Both sides may be represented by counsel and both may present their cases to the same fact finder. In this respect, there is no affront to fundamental fairness.

Support for this view is found in *Robertson* v. *Apuzzo* (1976) 170 Conn. 367 [365 A.2d 824], one of the few state cases nationwide to deal specifically with the argument that due process requires a right to a jury trial in a civil paternity action. (See Annot., Paternity Proceedings: Right to Jury Trial, *supra,* 51 A.L.R.4th at pp. 580-581, § 6.) The *Robertson* court held that neither federal nor state due process was violated where an indigent defendant in a paternity action could not obtain a jury trial because he could not afford the statutory jury fee. (365 A.2d at pp. 831-832.) The *Robertson* court concluded that the "right to a jury trial in a civil paternity action cannot be characterized as fundamental." (*Id.* at p. 832; accord, *State* ex rel. *Rake* v. *Ohden* (Iowa 1984) 346 N.W.2d 826, 829.)

The court in *Robertson* distinguished *Boddie* v. *Connecticut* (1971) 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780]. In *Boddie,* the Supreme Court held that a state could not, consistent with the due process clause of the Fourteenth Amendment to the federal Constitution, deny indigents access to its divorce courts by requiring the payment of certain fees. In distinguishing *Boddie,* the *Robertson* court stated: "Of primary significance is the fact that the defendant [in a paternity action] has not been denied access to the courts

but has been afforded a full judicial hearing on a trial to the court. . . . [O]ne cannot say that in our legal system the jury is a necessary component of accurate factfinding . . . . [Citation.] Unlike the situation in the *Boddie* case, we see no fundamental interest of the defendant that is gained or lost depending on the availability of a jury trial." (365 A.2d at pp. 831-832.)

The typical kind of evidence presented in a paternity action is not inherently better suited for a jury's evaluation than a judge's. *Schneider* put it best: "It goes without saying that the act necessarily preceding parentage is procreation. That act, in turn, is invariably private. Witnesses are, to put it mildly, scarce. Blood tests therefore play a crucial role in the accurate determination of paternity. [Citation.]" (191 Cal.App.3d at p. 1275; see also Evid. Code, §§ 890-897 [setting forth an evidentiary scheme for "Blood Tests to Determine Paternity"].)

In the case before us, blood tests played a crucial role. By defendant's own admission, four of the five or six potential fathers besides himself were excluded by blood testing. Of course, defendant's blood test was consistent with paternity here. Based on that test, the probability that he is the father of Andrea is 99.665 and the probability that he is the father of Joshua is 99.66. Defendant discounts these facts by noting that not all of the potential fathers were tested, and that there is a 1 percent chance that a man falsely accused of being a father would not be excluded by the blood test. We think it would degrade the concept of fundamental fairness to invoke its mandate based on this argument.

Realizing the uphill battle he faces in the context of fundamental fairness, defendant resorts to two disingenuous characterizations. He claims that *Schneider* "assumed that a defendant has a right to a jury trial under the [state] due process clause. . . ." *Schneider*, however, did not need to resolve the issue whether the state due process clause requires a jury trial in paternity actions but merely assumed for *purposes of argument* that it does. (191 Cal.App.3d at p. 1282.) The court in *Schneider* concluded that even assuming the defendant there was entitled to a jury trial under the state due process clause, he was not denied due process of law by the invocation of Evidence Code section 892 (which allows a trial court to order an alleged father to submit to blood tests and, upon refusal, to resolve the question of paternity against him). Therefore, *Schneider* offers no support for defendant's due process position. Defendant also notes the court in *Southern Pac. Transportation Co. v. Superior Court* (1976) 58 Cal.App.3d 433, 436 [129 Cal. Rptr 912] stated that the "right to a jury trial is guaranteed by the California Constitution, article I, section 7." In *Southern Pac.*, however, the court was referring to the article I, section 7 delineating the general consti-

tutional right to a jury trial that preceded article I, section 16. (*Id.* at pp. 435-436.) This is clear from the sentence following the article I, section 7 reference in that case—"This right is that existing at common law at the time the Constitution was adopted"—and from the citation there to *People* v. *One 1941 Chevrolet Coupe.* (*Id.* at p. 436.) Even if we assume the *Southern Pac.* court was referring to the due process clause embodied in article I, section 7(a), it is of no help to defendant. Under that assumption, the legal analysis for invocation of the right to a jury trial would be the same for article I, section 16 *and* article I, section 7(a) given the citation to *People* v. *One 1941 Chevrolet Coupe* and the sentence quoted above.

Under the *Salas* test, we are to balance the action's features and the private interests and consequences against the state's interest in not providing a right to a jury trial in the action. (24 Cal.3d at pp. 27-28.) Although the state's interest is largely financial and administrative, as it was in *Salas*, the private side of the scale does not pack much punch either. As noted by the state below, "[g]iven the lack of a right to a jury trial under the more specific provisions of Article I, Section 16, it is difficult to conclude that there is such a right in a paternity case under the more general provisions of Article I, Section 7." In the end, the denial of a right to a jury trial in a paternity action simply does not impinge upon fundamental fairness. Accordingly, the state due process clause (art. I, § 7(a)) does not require such a right.

## DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and Nicholson, J., concurred.