[No. F003967. Fifth Dist. May 15, 1986.]

Conservatorship of the Person of RONALD S. BESOYAN.
FRESNO COUNTY DEPARTMENT OF HEALTH,
Petitioner and Respondent, v.
RONALD S. BESOYAN, Objector and Appellant.

**COUNSEL**

Cynthia Calvert, under appointment by the Court of Appeal, for Objector and Appellant.

Max E. Robinson, County Counsel, and Howard K. Watkins, Deputy County Counsel, for Petitioner and Respondent.

## Opinion

**THE COURT**\*—Ronald Besoyan appeals the March 14, 1984, order of the Fresno County Superior Court affirming a prior order (following a court hearing) granting the petition of the Public Guardian of Fresno County for a Lanterman-Petris-Short (LPS) conservatorship.[1] The March order stemmed from a three-day jury trial culminating in a finding that Ronald Besoyan was gravely disabled as a result of a mental disorder. (§§ 5350, 5008, subd. (h)(1).) Appellant was thereafter placed by his conservator, the Fresno County Director of Health, in a licensed psychiatric facility.

We appointed counsel on appeal for the conservatee. Counsel has filed a brief setting forth the facts of the case. She presents no argument for reversal, but asks this court to review the record for error pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. In *People* v. *Wende,* at pages 440-442, the Supreme Court directed the Courts of Appeal to review the entire record whenever appointed counsel for an indigent criminal defendant submits a brief which raises no specific issues or describes the appeal as frivolous.

Although *Wende* review has been held applicable to certain civil proceedings dealing with the parent/child relationship, due to the fundamental nature of the rights involved (e.g., *In re Joyleaf W.* (1984) 150 Cal.App.3d 865, 868-869 [198 Cal.Rptr. 114] [Civ. Code, § 232 proceeding to terminate parental custody and control]; *In re Brian B.* (1983) 141 Cal.App.3d 397, 398 [190 Cal.Rptr. 153] [§ 300 proceeding to declare a minor a dependent child of the juvenile court]), our research fails to disclose any case authority that extends *Wende* to an action appealing the imposition of a conservatorship. Counsel for appellant, citing the "liberty interest" at stake in such actions, urges this court to extend *Wende* review to such proceedings.

There can be no doubt that a finding of grave disability may result in serious deprivation of personal liberty. A person found to be gravely disabled can be involuntarily confined in a mental hospital for up to a year by the conservator, with the possibility of additional year-long extensions. (§§ 5358, 5361.) Any period of temporary conservatorship (as a general rule, a maximum of 30 days—§ 5352.1) is not included in the one-year period. (§ 5361.) If the conservator petitions to reestablish a lapsing conservatorship, the court may order the conservatee confined past the expiration

---

\*Before Brown (G. A.), P. J., Hanson (P. D.), J., and Martin, J.

[1]The Lanterman-Petris-Short Act is found in Welfare and Institutions Code sections 5000 et seq. All statutory references herein are to the Welfare and Institutions Code unless otherwise indicated.

date until renewal proceedings are completed. (§ 5361.) As stated by our Supreme Court in *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 224 [152 Cal.Rptr. 425, 590 P.2d 1]: "In effect, these statutes assure in many cases an unbroken and indefinite period of state-sanctioned confinement. 'The theoretical maximum period of detention is *life* as successive petitions may be filed . . . .' (*In re Gary W.* (1971) 5 Cal.3d 296, 300, . . . italics added.)"

The gravely disabled person for whom conservatorship has been established faces the loss of many other liberties in addition to the loss of his freedom from physical restraint, such as the right to manage and dispose of his money and property. The conservatee may suffer numerous statutory disabilities, including possible loss of the following rights or privileges: to remain licensed to practice a profession, to refuse certain types of medical treatment, to possess a driver's license, to remain registered to vote and to enter into contracts. (*Id.* at 227-228.)

Certain collateral consequences remain even after the conservatorship has been terminated. (*Conservatorship of Buchanan* (1978) 78 Cal.App.3d 281, 286 [144 Cal.Rptr. 241], disapproved on another point in *Conservatorship of Early* (1983) 35 Cal.3d 244, 255 [197 Cal.Rptr. 539, 673 P.2d 209].) Grave disability proceedings carry special threats to reputation. A finding of grave disability is equivalent to a finding that a person is unable to feed, clothe or house himself because of a mental disorder. (§ 5008, subd. (h)(1).) Despite the admirable mandate contained in section 5368,[2] "[i]t is implausible that a person labelled by the state as so totally ill could go about, after his release, seeking employment, applying to schools, or meeting old acquaintances with his reputation fully intact." (*Conservatorship of Roulet, supra,* 23 Cal.3d at 229.)

In *Roulet,* our Supreme Court held that the due process clause of the California Constitution requires jury unanimity and proof beyond a reasonable doubt in LPS proceedings. The rationale derives, in part, from that court's prior observation in *In re Gary W., supra,* 5 Cal.3d at p. 307, that "the interests involved in civil commitment proceedings are no less fundamental than those in criminal proceedings and . . . liberty is no less precious because forfeited in a civil proceeding than when taken as a consequence of a criminal conviction." Indeed, as demonstrated above, a conservatee may be subjected to greater control of his or her life than one convicted of a crime.

---

[2]Section 5368 states: "A person who is no longer a conservatee shall not be presumed to be incompetent by virtue of his having been a conservatee under the provisions of this part."

■ In addition, a proposed LPS conservatee is entitled to appointed counsel (§ 5365) and, if a jury trial is demanded, the right to confront witnesses, produce evidence, refuse to testify regarding any criminal activity in which he might have engaged or about any 'other matter which could subject him to criminal prosecution and all other civil trial rights. (*Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 550 [200 Cal.Rptr. 262]; *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 287, fn. 17 [139 Cal.Rptr. 357].) It was recently determined that an indigent conservatee is entitled to free transcripts on appeal. (*Waltz* v. *Zumwalt* (1985) 167 Cal.App.3d 835, 839 [213 Cal.Rptr. 529].)

■ We further note the manifest intent of the Legislature that the LPS Act be construed "[t]o safeguard individual rights through judicial review." (§ 5001, subd. (d).) We construe this provision to encompass appellate review.

■ As simply stated most recently by the court in *Waltz* v. *Zumwalt, supra,* 167 Cal.App.3d at page 839: "[In grave disability proceedings], we deal with persons threatened with loss of liberty and exposure to social stigma, persons similarly situated to defendants in criminal matters. As such, they must be granted the same benefits as if the proceedings were truly criminal." ■ In sum, we hold *Wende* review is applicable where appointed appellate counsel has filed a brief on behalf of an LPS conservatee which raises no specific issues or describes the appeal as frivolous.

This court granted appellant permission to file a brief on his own behalf and further granted one 30-day extension of time upon his request. The extended time period has elapsed and no brief has been filed. ■ A review of the entire record discloses no reasonably arguable appellate issues. Substantial evidence supports the jury's findings and the trial court's order. Appellant was competently represented by counsel below and on this appeal.

Order affirmed.

A petition for a rehearing was denied May 30, 1986.