[No. F030213. Fifth Dist. Feb. 16, 1999.]

COUNTY OF KERN, Plaintiff and Respondent, v.
DAVID ALLEN DILLIER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Catherine Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary Jane Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, P. J.**—On September 19, 1997, the Kern County District Attorney's Office initiated a civil action against appellant, David Allen Dillier, to establish his paternity of, and parental obligations for, four minor children. On this same date, the district attorney's office also submitted a proposed judgment that, if approved by the court, would establish appellant's paternity, the amount of monthly child support he was to pay in the future, and the amount he owed the county as reimbursement for past public assistance payments made on behalf of the children.

Appellant was personally served with the summons and complaint on October 22, 1997, while incarcerated in state prison. Accompanying these pleadings was a document which advised appellant that he had a right to counsel but had to ask that counsel be appointed if he could not afford to hire his own. This same document also apprised appellant that a default judgment would be entered against him if he failed to file a written answer within 30 days of being served with the summons and complaint.

On December 1, 1997, no answer having been filed or extension of time for doing so having been granted, the district attorney asked the court to enter a default judgment declaring appellant the father of the minor children and setting a specific amount of child support to be paid.

On January 9, 1998, the trial court, by way of default under Welfare and Institutions Code section 11355, adjudged appellant to be the father of all four minor children but reserved jurisdiction on the issue of child support since appellant was then serving a state prison commitment and had no wages or other funds from which to pay said support.

Appellant timely filed his notice of appeal on February 2, 1998.[1]

On August 24, 1998, counsel for appellant filed a *Wende*[2] brief with this court. In it, counsel represented that she had reviewed the record of the proceedings below and found no arguable issues to raise on appeal. Counsel asked that we conduct an independent review of the record to determine whether any issues exist which, if resolved favorably to appellant, would result in reversal or modification of the judgment of the trial court. She cites *Wende* and *People* v. *Johnson* (1981) 123 Cal.App.3d 106, 109-112 [176 Cal.Rptr. 390], as support for this request.

By order dated August 28, 1998, we ordered counsel for the father and counsel for the children to file supplemental briefs addressing this issue in light of our Supreme Court's decision in *In re Sade C.* (1996) 13 Cal.4th 952 [55 Cal.Rptr.2d 771, 920 P.2d 716] (hereinafter *Sade*). We have now received those briefs and, after considering the matter, conclude that, given the circumstances of this case, appellant is not entitled to such review.

DISCUSSION

I*

*The Paternity Order Is Appealable*

. . . . . . . . . . . . . . . . . . . . . . .

---

[1]This notice was timely filed even though it was filed after rendition of the judgment but before the judgment was entered. (Cal. Rules of Court, rule 2(c).)

[2]*People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] (hereinafter, *Wende*).

*See footnote, *ante,* page 1412.

II

*Appellant Is Not Entitled to Anders/Wende Review*

This case gives us occasion to revisit our decision in *County of Madera* v. *Jacobson* (1987) 194 Cal.App.3d 569, 570 [239 Cal.Rptr. 602], where the government initiated a paternity action in which it sought a determination of the father's paternity, reimbursement of $5,750 in funds expended as Aid to Families with Dependent Children, and an order setting monthly child support at $250. We concluded that the "multidimensional character of a paternity finding entitles an indigent defendant to the same manner of appellate review as given to the indigent parent faced with temporary or permanent loss of custody of a child." (*Id.* at p. 573, hereinafter *Jacobson.*)

We came to this conclusion after examining those cases that provided *Wende* review in other civil contexts—namely conservatorship proceedings and dependency proceedings where a minor child had been declared a ward of the court or parental rights had been terminated. (*Wende, supra,* 25 Cal.3d at pp. 571-572, relying on *Conservatorship of Besoyan* (1986) 181 Cal.App.3d 34, 38 [226 Cal.Rptr. 196] [conservatorship]; *In re Joyleaf W.* (1984) 150 Cal.App.3d 865, 868-869 [198 Cal.Rptr. 114] [dependency proceeding to terminate parental rights], and *In re Brian B.* (1983) 141 Cal.App.3d 397, 398 [190 Cal.Rptr. 153] [dependency proceeding to declare a minor a ward of the court] (hereinafter *Brian B.*).)

We also relied on the importance our Supreme Court attached to paternity findings in *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226] (hereinafter *Salas*). Chief Justice Bird, writing for a bare majority of the court, said the following about those interests: "An adjudication of paternity may profoundly affect a person's life. It may disrupt an established family and damage reputations. Further, a court's determination of paternity exposes a defendant to deprivation of property and, potentially, liberty. It entails the obligation to support and educate a child [citations], an obligation that does not end at the child's age of majority. [Citation.] Moreover, a child support order is more freely enforceable by garnishment than an ordinary civil judgment [citations], and is not dischargeable in bankruptcy [citation]. Also, the failure to pay child support may be enforced through the civil contempt power [citation], as well as the Uniform Civil Liability Act [citation] and interstate assistance statutes [citations]. A judgment of paternity, even if taken by default, is res judicata in any subsequent civil enforcement proceeding. [Citation.] [¶] Failure to support a child may also be prosecuted criminally. (Pen. Code, § 270.) . . . ." (*Salas, supra,* 24 Cal.3d at p. 28, fns. omitted.)

The *Salas* majority also focused on the inequality of representation that would result should it find against appointment of counsel for the indigent party whose fatherhood was being challenged. To demonstrate the inequity of representation between the parties, the court had to look no further than the two cases then pending before it. The court observed that, in state-prosecuted actions, the plaintiffs (usually the mother and/or the minor child) were represented free of any charge by a district attorney who frequently is a specialist in the field. Whereas neither of the indigent men before it whose children were alleged to have been born out of wedlock had any working knowledge of the legal system, only one had some knowledge of the English language, and without legal assistance, neither was able to procure the experts needed to perform the blood tests that might exonerate them. (24 Cal.3d at p. 30.) The court also observed that both men were found to be the father in their respective cases based solely on alleged facts which were deemed admitted because they went uncontradicted and testimony of the mother, which was not subjected to cross-examination. (*Id.* at pp. 30-31.) The *Salas* court concluded that decisions rendered in this manner were not only unfair but unreliable. (*Id.* at p. 31.)

The *Salas* majority expressly rejected the argument that the men in paternity actions are not entitled to appointed counsel because they are no different than other civil litigants.[4] (24 Cal.3d at pp. 31-32.) In doing so, the court reasoned that paternity actions are unlike ordinary civil actions because the potential father finds himself pitted against the full power of the state in a case where the existence of a biological relationship—one which carries with it serious financial, legal and moral obligations—is to be determined.

The *Salas* majority ultimately concluded that these interests were sufficiently great that the Fourteenth Amendment of the United States Constitution and article I, section 7, subdivision (a) of the California Constitution mandated that counsel be appointed for an indigent parent at the trial court level. (*Wende, supra,* 25 Cal.3d at p. 572, citing *Salas,* 24 Cal.3d at pp. 26, 28, 34 (maj. opn. of Bird, C. J.).)

Meanwhile, in other contexts, courts were declining to extend *Wende.* They refused to expand *Wende* to general civil cases. (*Berger* v. *Godden* (1985) 163 Cal.App.3d 1113, 1115, 1117, fn. 2 [210 Cal.Rptr. 109]; *Grillo* v. *Smith* (1983) 144 Cal.App.3d 868, 870, 873, fn. 3 [193 Cal.Rptr. 414].) The

---

[4]The *Salas* minority disagreed. It concluded that an indigent father in a paternity action had no right to appointed appellate counsel because no liberty interest was at stake. (24 Cal.3d at p. 36.) It reasoned that the only possible consequence of the paternity action was imposition of a financial obligation and that the threat of loss of liberty could only arise in a collateral criminal proceeding. (*Ibid.*)

courts also declined to conduct a partial independent review where counsel raised at least one issue on appeal. (*People* v. *Woodard* (1986) 184 Cal.App.3d 944, 946-947 [229 Cal.Rptr. 350]; *People* v. *Johnson, supra*, 123 Cal.App.3d at p. 110.)

. This disagreement over the scope of *Wende* continued. In 1992, for example, one court held that *Wende* review was not available to a criminal defendant with retained, as opposed to appointed, counsel. (*People* v. *Placencia* (1992) 9 Cal.App.4th 422, 424 [11 Cal.Rptr.2d 727].) In 1995, the court that decided *Brian B., supra*, 141 Cal.App.3d 397 and *In re Joyleaf W., supra*, 150 Cal.App.3d 865, two of the cases upon which we rested our decision in *Jacobson, supra*, 194 Cal.App.3d 569, reversed course, disapproved these decisions, and found that *Wende* did not extend to appeals from an order terminating parental rights.[5] (*In re Angelica V.* (1995) 39 Cal.App.4th 1007, 1011-1014 [46 Cal.Rptr.2d 295].) That same court also found that petitioners on an extraordinary writ were not entitled to *Wende* review of an order setting of a Welfare and Institutions Code section 366.26 selection and implementation hearing. (*Ronald S.* v. *Superior Court* (1995) 34 Cal.App.4th 1467, 1468-1469 [41 Cal.Rptr.2d 139].)

A separate division of this same appellate district later concluded that *Anders* v. *California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (hereinafter *Anders*), its progeny, and *Wende* required the appellate court to conduct an independent investigation of the record when appointed counsel in a juvenile dependency case submitted a brief advising the court that no issues could be found. (*In re Andrew B.* (1995) 40 Cal.App.4th 825, 828 [47 Cal.Rptr.2d 604], disapproved in *Sade, supra*, 13 Cal.4th at pp. 982-983, 992, 994, fns. 11-14, 18-19, 22.)

It is against this backdrop that *Sade* was decided. The first question our high court faced was whether *Anders* applied to an indigent parent's appeal from a judgment or order, obtained by the state, adversely affecting his custody of his child or his status as the child's parent. (*Sade, supra*, 13 Cal.4th at p. 965.) After an exhaustive review of *Anders*, its antecedents, and its progeny, our high court concluded that this question must be answered in the negative. (*Sade, supra*, 13 Cal.4th at pp. 981-982.)

*Anders* is important because it formed the sole basis for the decision in *Wende*, as it pertains to the right of an indigent criminal defendant to obtain

---

[5]This same court reached this conclusion in *In re Angela G.* (Cal.App., A066139). However, review was granted by the California Supreme Court on June 15, 1995. Even though review was dismissed on December 14, 1995, the opinion was not ordered republished. Given these circumstances, the previously published case is no longer citeable authority. (Cal. Rules of Court, rule 976(d).)

independent appellate review of the trial court record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous. (*Wende, supra,* 25 Cal.3d at pp. 439-441.) The scope of coverage afforded by *Wende* can only be as great as the case upon which it was founded. It follows then, that if *Anders* does not provide appellant with independent appellate review, neither can *Wende.* Because the rationale employed in *Sade* is highly persuasive in the matter now pending before us, we quote from it at length:

"By its very terms, *Anders*'s 'prophylactic' procedures are limited in their applicability to appointed appellate counsel's representation of an indigent *criminal defendant*—and there only in his first appeal as of right. An indigent parent adversely affected by a state-obtained decision on child custody or parental status is simply not a criminal defendant. Indeed, the proceedings in which he is involved must be deemed to be civil in nature and not criminal. [Citation.] To quote Chief Justice Burger's concurring opinion in *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 34 . . . , they are simply 'not "punitive." ' That they may be said to 'bear[] many of the indicia of a criminal trial' [citation] goes to form and not to substance. As a consequence, they are far removed from the object of the *Anders* court's concern, which was the first appeal as of right *in a criminal action.*

"Furthermore, *Anders*'s 'prophylactic' procedures are dependent for their applicability on the existence of the indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state—and there again, only in his first appeal as of right. That right of the indigent criminal defendant, however, does not exist for the indigent parent adversely affected by a state-obtained decision in child custody or parental status. True, the *Finley* court stated that the procedures in question are 'relevant when'—albeit 'only when'—'a litigant has a previously established constitutional right to counsel.' [Citation.] But it made plain that the indicated right was that of the indigent criminal defendant in his first appeal as of right—the 'right [of an indigent criminal defendant to the appointment of appellate counsel or review of the record by the appellate court to determine if appointment of such counsel would be helpful to the court or advantageous to the defendant] established in *Douglas* [v. *California* (1963) 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]]'—and none other.

"Lastly, *Anders*'s 'prophylactic' procedures are designed solely to protect the indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state—and here yet again, only in his first appeal as

of right. Since that right of the indigent criminal defendant, by its very terms, does not exist for the indigent parent adversely affected by a state-obtained decision on child custody or parental status, any protection of that nonexistent 'right'—whether in the form of the procedures in question or otherwise—fails at bottom for lack of an object." (*Sade, supra,* 13 Cal.4th at pp. 982-983, fns. omitted.)

So, where does this leave our decision in *Jacobson*? Clearly, it has been disapproved to the extent it relied on *Joyleaf W.* and *Brian B.*—cases that read *Anders* and its progeny as providing for *Wende* review outside the criminal appeals setting. (*Sade, supra,* 13 Cal.4th at p. 983, fn. 13.) It would seem then that, contrary to our decision in *Jacobson,* an indigent defendant, such as appellant, who appeals from a state-obtained order establishing his paternity is no longer entitled to independent appellate court review of the trial court record under *Anders* or *Wende.*

Appellant tries to bring this case within the parameters of *Sade* by arguing that paternity actions, unlike ordinary civil actions, have a criminal enforcement mechanism; namely that found in Penal Code section 270.[6]

The applicability of *Anders*'s "prophylactic" procedures are dependent upon, and designed solely to protect, an indigent *criminal* defendant's Fourteenth Amendment right to appellate counsel appointed by the state in his first appeal as of right. *Sade* made it very clear that the protections created by *Anders* and its progeny belonged solely to criminal defendants and, accordingly, found that they do not exist for the indigent parent adversely affected by a state-obtained decision on parental status. (*Sade, supra,* 13 Cal.4th at pp. 982, 983.) The high court expressly rejected the notion that *Anders*'s "prophylactic" measures were available whenever *any*

---

[6]As pertinent, Penal Code section 270 provides: "If a parent of a minor child willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child, he or she is guilty of a misdemeanor punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment. If a court of competent jurisdiction has made a final adjudication in either a civil or a criminal action that a person is the parent of a minor child and the person has notice of such adjudication and he or she then willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter, medical attendance or other remedial care for his or her child, this conduct is punishable by imprisonment in the county jail not exceeding one year or in a state prison for a determinate term of one year and one day, or by a fine not exceeding two thousand dollars ($2,000), or by both such fine and imprisonment. This statute shall not be construed so as to relieve such parent from the criminal liability defined herein for such omission merely because the other parent of such child is legally entitled to the custody of such child nor because the other parent of such child or any other person or organization voluntarily or involuntarily furnishes such necessary food, clothing, shelter or medical attendance or other remedial care for such child or undertakes to do so."

right to assistance of appellate counsel appointed by the state belonged to *any* indigent in his first appeal of right even if a fundamental interest is implicated. *(Sade, supra,* 13 Cal.4th at pp. 982, 983, fns. 11-13.)

While *Sade* involved the *termination* of parental status, we believe the same reasoning applies when the *creation* of parental status is at stake.[7]

We first note this is not an appeal from a criminal proceeding. The risk of criminal liability is far too remote and/or speculative for this action to fall within the coverage of *Anders* and its progeny. The order entered in this case merely established paternity. No award of support was entered. As such, it exposed appellant to absolutely no risk of criminal liability.

True, the court retained jurisdiction to modify its order regarding support and, the odds are, it will exercise that jurisdiction at some future date. But even when that happens, the indigent parent is still not exposed to criminal liability. His or her liability is primarily financial. He is, therefore, not much different than an ordinary civil litigant.

His liability remains predominantly financial until such time as the parent willfully fails to pay the court-ordered support (despite his ability to do so) *and* the district attorney files a *separate* criminal action charging the non-paying parent with a violation of Penal Code section 270. It is this separate action, not the civil paternity action, that exposes the parent to criminal liability.

This exposure to criminal liability is not unlike that of a parent in a dependency proceeding—actions in which our Supreme Court found no right to independent review on appeal. Many of these proceedings are instituted as a result of one or more of the parent's acts that not only establish jurisdiction of the juvenile court under Welfare and Institutions Code section 300, but also amount to violations of criminal law—being under the influence of a controlled substance (Health & Saf. Code, § 11550), child endangerment (Pen. Code, § 273a), corporal punishment of a child (Pen. Code, § 273d), and various sexual offenses (Pen. Code, §§ 261, 285, 288) to name just a few. The facts that are developed during the dependency proceedings may, and frequently do, result in criminal prosecution of the parent(s). Certainly, our high court was aware of this implication when it reached its decision in *Sade* denying *Anders* review to indigent parents who appeal an order or judgment entered in a dependency action because the appeal did not arise out of a criminal case. We see no reason to treat appeals from state-initiated paternity determinations any differently.

---

[7]This is not to say that the creation and termination of parental status ought to be treated the same in other contexts.

Finally, while the order establishing paternity is admissible evidence in a prosecution for failure to provide (Pen. Code, § 270e), it is not conclusive on the issue of paternity and does not relieve the prosecution of its burden to prove each of the elements of willful failure to provide beyond a reasonable doubt. (Fam. Code, § 7636; *Patterson* v. *Municipal Court* (1965) 232 Cal.App.2d 289, 299 [42 Cal.Rptr. 769]; see *Salas, supra,* 24 Cal.3d at p. 29, fn. 5 [recognizing admissibility of paternity judgment but declaring that it is not res judicata on the issue owing to the higher level of proof required in the criminal action].)

Based on the foregoing, we conclude that *Anders* and its progeny, as interpreted by our high court in *Sade,* do not provide for *Wende* review in cases where the indigent parent appeals from a state-obtained order establishing his/her paternity. This does not, however, end our inquiry for the question still remains whether there is an independent basis for granting this type of review.

In *Jacobson,* we did not rest our decision solely on the cases interpreting *Anders* and *Wende.* We also looked to those interpreting the due process clause of article I, section 7, of the California Constitution to determine whether such review was warranted. (*Jacobson, supra,* 194 Cal.App.3d at pp. 572-573, citing *Salas, supra,* 24 Cal.3d 22, and *Conservatorship of Besoyan, supra,* 181 Cal.App.3d 34.) The *Sade* court made it clear that the federal due process clause may provide a basis, independent of *Anders,* for providing this type of review. (*Sade, supra,* 13 Cal.4th at pp. 986-991.)

■ In order to decide whether appellant would be entitled to *Wende*-type review under both state and federal Constitutions, we begin with the proposition that "[t]he touchstone of due process is fundamental fairness." (*Salas, supra,* 24 Cal.3d at p. 27.) Whether fundamental fairness is likely to be accomplished in the absence of our conducting a *Wende* review in this case is to be evaluated under the due process clause of the state Constitution by examining (1) the private interests at stake; (2) the government's interests involved; and (3) the risk that the absence of this procedure will lead to an erroneous resolution of the appeal. (See *Sade, supra,* 13 Cal.4th at pp. 987, 991, fn. 18 [applying these factors in parental termination/dependency setting under both the federal and state due process clauses to determine the right to *Wende* review]; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1153 [65 Cal.Rptr.2d 913] [same]; cf. *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 27 [101 S.Ct. 2153, 2159-2160, 68 L.Ed.2d 640] [applying these factors to determine whether an indigent parent in a dependency proceeding is entitled to appointed counsel under the due process clause of the federal Constitution]; *Salas, supra,* 24 Cal.3d at p. 27 [state due

process requires weighing the interests involved, both private and governmental, and the nature of the proceedings when deciding whether to require appointment of counsel for indigent parent appealing from paternity judgment].) As we observed in *In re Meranda P.*, *supra*, 56 Cal.App.4th 1143, this inquiry "necessitates consideration of the factual circumstances and the procedural setting of the case at the time when the error is said to have occurred." (*Id.* at p. 1153, fn. 6; see *Lassiter* v. *Department of Social Services*, *supra*, 452 U.S. at pp. 32-33 [101 S.Ct. at pp. 2162-2163].)

We begin then with the private interests of the indigent parent and his/her children. As the *Salas* court observed, a paternity action involves more than monetary judgments. It affects the most basic of biological relationships—that of parent and child—and one which is implicitly recognized as a liberty interest under both Constitutions. (*Sade, supra*, 13 Cal.4th at p. 987, and cases cited therein; see *Salas, supra*, 24 Cal.3d 22 (maj. opn. of Bird, C. J.).) Because of its significant legal, moral, and emotional ramifications, the parent has a considerable interest in an accurate and just paternity decision. (*Lassiter* v. *Department of Social Services, supra*, 452 U.S. at p. 27 [101 S.Ct. at pp. 2159-2160]; *Sade, supra*, 13 Cal.4th at pp. 987-988; *Salas, supra*, 24 Cal.3d at p. 28.) Our Supreme Court has characterized the interest in being free from an incorrect imposition of a parent-child relationship as "compelling." (*County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483, 488 [198 Cal.Rptr. 779, 674 P.2d 750]; *Salas, supra*, 24 Cal.3d at p. 28.) These factors weigh in favor of imposing a due process duty to conduct a *Wende*-type review since such a procedure would provide added protection against an incorrect paternity determination.

The child shares this liberty interest in a just determination. (*Sade, supra*, 13 Cal.4th at p. 988, and cases cited therein.) As the *Salas* majority observed: "The child, to a large extent forgotten in such proceedings, has been termed the 'principal plaintiff' in a paternity action. (Krause, [Illegitimacy: Law and Social Policy (1971)] at p. 108.) In a sense, it is the child's identity that is litigated in a proceeding to determine parentage. Any determination that a particular individual is a child's biological father may have profound sociological and psychological ramifications. Further, the child's rights of support and inheritance against the father are at issue, as well as his or her future obligation to support the father. [Citation.] 'If the child is to have anything, it must have a *right* to have his paternity ascertained in a fair and efficient manner.' (Krause, *supra*, at p. 113, italics in original.) It is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to have some assurance that the correct person has been so identified. When the state initiates paternity proceedings, whether on behalf of the mother . . . or the child . . . the state owes it to the

child to ensure that an accurate determination of parentage will be made." (*Salas, supra,* 24 Cal.3d at pp. 33-34.)

The state has a " '*parens patriae* interest in preserving and promoting the welfare of the child . . . .' " (*Sade, supra,* 13 Cal.4th at p. 989, quoting *Santosky* v. *Kramer* (1982) 455 U.S. 745, 766 [102 S.Ct. 1388, 1401-1402, 71 L.Ed.2d 599]; accord, *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at p. 27 [101 S.Ct. at pp. 2159-2160].) It also has interest in a just and accurate resolution of the indigent parent's appeal. (*Sade, supra,* 13 Cal.4th at p. 989; see *Santosky* v. *Kramer, supra,* 455 U.S. at p. 766 [102 S.Ct. at pp. 1401-1402]; *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at p. 27 [101 S.Ct. at pp. 2159-2160].) These interests have also been characterized as "compelling." (*Sade, supra,* 13 Cal.4th at p. 989; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Finally, the state has a " 'fiscal and administrative interest in reducing the cost and burden of [the] proceedings.' " (*Sade, supra,* 13 Cal.4th at pp. 989, quoting *Santosky* v. *Kramer, supra,* 455 U.S. at p. 766 [102 S.Ct. at pp. 1401-1402]; accord, *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at p. 28 [101 S.Ct. at p. 2160].) This interest, however, has been characterized as merely " 'legitimate.' " (*Sade, supra,* 13 Cal.4th at p. 990, quoting *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at p. 28 [101 S.Ct. at p. 2160].)

The third and final factor to consider is the risk of erroneous decision in the absence of *Wende*-type review in this case. Insofar as the paternity finding was the result of a default judgment, the record before us is very limited. We do know that all four children carry appellant's last name. What we do not know is whether this was the result of their having been born into their parents' marriage or whether their mother simply chose to give them appellant's last name. Nor do we know whether appellant ever held them out to be his children. What we find determinative, however, is the fact that appellant has never denied being the father of these children. Consequently, the risk of an erroneous paternity determination in this case simply does not exist.

Since that is the only order of consequence entered in the action before us, the balancing of the three interests leads us to conclude that fundamental fairness does not require *Anders*- or *Wende*-type review of the order declaring appellant to be the father of the children named in the complaint filed in this case.

Having made this determination, the only question that remains is what is to be done with this appeal? ■ Once again, we find *Sade* instructive. In

the words of our Supreme Court: "A 'reviewing court has inherent power, on motion or its own motion, to dismiss an appeal which it cannot or should not hear and determine.' [Citation.] An appealed-from judgment or order is presumed correct. [Citations.] Hence, the appellant must make a challenge. In so doing, he must raise claims of reversible error or other defect [citation] and 'present argument and authority on each point made' [citations]. If he does not, he may, in the court's discretion, be deemed to have abandoned his appeal. [Citation.] In that event, it may order dismissal. [Citation.]" (*Sade, supra,* 13 Cal.4th at p. 994.)

Dismissal is appropriate here. With no error or other defect raised against the orders appealed from, there is no reason to reverse or modify the order in question. The appeal is dismissed.

Vartabedian, J., and Harris, J., concurred.

A petition for a rehearing was denied March 19, 1999.