Filed 1/31/24  Rhodes v. Ma CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TYRA RHODES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SAU MA, et al.,<br><br>Defendants and Respondents. | A166177;<br>A166438<br><br>(Alameda County<br>Super. Ct. No.<br>RG21095435) |

Tyra Rhodes has filed two appeals, which we have ordered consolidated on our own motion.  The first is from a judgment entered after the trial court granted a motion to enforce a settlement agreement Rhodes entered into. The second is from the trial court's denial of Rhodes's ex parte request for an injunction, which request was filed by Rhodes after she had filed her first appeal.  We reject the first appeal and affirm the judgment.  We dismiss the second appeal, deeming it abandoned because it has no argument.

1

## BACKGROUND

### The Parties and the General Setting

In June 2018, Rhodes entered into a rental agreement for a dwelling unit on Bancroft Avenue, Oakland (the property). The agreement was with Logman Ma, individually and as trustee of the Logman Ma and Sau Ma Trust, Sau Ma individually and as trustee of the Logman Ma and Sau Ma Trust, and Mason Ma. Mason Ma manages the property. Another participant here, though not a party, is Abode Services (Abode), which assists Rhodes with her housing needs and serves as the liaison between Rhodes and the property owners.

On April 14, 2021, represented by attorney Andrew Wolff, Rhodes filed a complaint in Alameda County Superior Court against Logman Ma, Sau Ma, and Mason Ma. The complaint alleged 14 causes of action, based on the essential claim that defendants failed or refused to maintain the property in a habitable condition (the underlying lawsuit). Two months later, Logman Ma was dismissed from the underlying lawsuit, which proceeded against Sau Ma and Mason Ma (hereafter, when referred to collectively, the Ma parties.)

The parties to the underlying lawsuit participated in a mediation, the upshot of which is that it was settled, with both sides represented by counsel. The essence of the settlement was that the parties would mutually release each other; the property would be returned to the Mas (giving Rhodes a reasonable period of time to find new housing); and Rhodes would receive a total of $95,000 and a letter of reference to assist her in finding new housing.

On January 6, 2022, both sides and their counsel signed a comprehensive "Settlement Agreement and Release of All Claims," (the settlement agreement), which in its essential terms provided as follows:

2

- Rhodes would receive $95,000 in three installments: (1) $25,000 within 14 days of the execution of the settlement agreement, (2) $45,000 within 14 days of resolution of an outstanding Medi-Cal/DCHS lien, and (3) $25,000 upon Rhodes actually moving out of the property.

- The Ma parties would provide Rhodes with a letter of reference for use in her search for housing.

- Rhodes would vacate the property by close of business June 6, 2022.

- Provided Rhodes vacated the property by June 6, she would be excused from paying the Mas any compensation for the use of the property from date of the settlement through June 6, 2022. But if Rhodes did not move out by June 6, the "move out" payment would be reduced by $75 for each day she remained in possession thereafter.

The settlement agreement also had a confidentiality provision, a non-disparagement provision, and an enforcement provision that provided in pertinent part as follows: "The PARTIES to this Agreement stipulate that the superior court of California of the County of Alameda shall retain jurisdiction over the parties to enforce this Agreement pursuant to California Code of Civil Procedure section 664.6 until full performance is accomplished. . . . This Agreement shall be binding, enforceable, and admissible." The settlement agreement also required Rhodes to file a notice of settlement with the court.

The parties also signed a Stipulated Entry of Judgment (stipulation) giving the Mas the right to apply ex parte to obtain judgment for possession should Rhodes fail to surrender the property by June 6. On February 22, the

3

stipulation was filed with the court, and the Mas' counsel advised Mr. Wolff, Rhodes's attorney, of the filing and served him with a copy of the stipulation.

On May 19, Mr. Wolff filed a "Notice of Settlement of Entire Case," confirming that the matter settled on January 6.

Rhodes did not move out of the property by June 6. What she did was send Sau Ma a letter accusing him of committing a breach of the settlement agreement by disclosing its terms to Abode. Specifically, Rhodes's letter included the following accusation: "[O]n April 25, 2022 I've received information in regards of this agreement from my case management team that Mason Ma deliberately contacted my case management team and revealed that I[,] Tyra Rhodes[,] had sued him (Mason Ma) and I was awarded money from me suing Mason Ma[,] he also revealed how this was court ordered and both of us signed the court ordered agreement as well he informed that it was court ordered that I had to move before or on the day that was agreed and if I stay longer each day will cost me more money all this he has revealed. . . . Due to the breach of this agreement, I will be CANCELLING this settlement agreement unable to participate in the agreement after Mason Ma called my case management on April 25th, 2022, and deliberately disclosed of our agreement between Myself and all parties as written above."[1]

_____

[1] As of the date of her letter, Rhodes had already received the first payment of $25,000, and her letter stated she would be returning $10,000 of the $25,000 and would return another $10,000 at the end of the year. She further stated it was the Ma parties' responsibility to recoup from her counsel the remaining $5,000 they had paid to her. There is no evidence in the record that the Mas ever received the full $25,000 they had paid Rhodes.

4

Although the letter did not mention any specific statements, Rhodes also claimed that Sau Ma committed a breach of the non-disparagement provision of the settlement agreement.

**The Proceedings Below**

On June 10, the Mas filed a motion for enforcement of the settlement, set for hearing on July 6. The motion was accompanied by declarations of their attorneys and a memorandum of points and authorities.

Represented by Mr. Wolff, Rhodes filed opposition, including a memorandum of points and authorities and a declaration and amended declaration of Rhodes. Among other things, Rhodes's declaration claimed that when Abode learned of the settlement, it stopped processing her transfer and helping her relocate, claiming that this was because of Mason Ma's disclosure of the settlement terms to Abode. Rhodes further claimed that Mr. Ma had "on repeated occasions . . . made negative comments about [her] to [her] former neighbor." Rhodes's declaration also contained this conclusory statement: "Defendants have committed fraud because they never intended to comply with the confidentiality and non-disparagement provisions in the settlement agreement," a statement also repeated in Rhodes's opposition brief.[2]

On July 6, the date scheduled for hearing the motion, the trial court continued the matter so that the depositions of the Abode employees involved could be taken. Following those depositions, subsequent briefing by the

---

[2] Rhodes states in her opening brief that she testified at "trial" on September 14, 2022 concerning the claimed deception inducing her to sign the settlement agreement. She cites no such testimony in the record, and we are not aware of any "testimony" on September 14. Beyond that, the clerk's transcript reflects that Rhodes did not appear on September 14.

5

parties, and a reply from the Mas, the motion came on for hearing on September 14. Rhodes did not appear; counsel for the Mas did.

On September 15, the trial court entered its order granting the motion, finding the settlement agreement valid and enforceable. The order discussed in detail the testimony of the Abode employees, and held that the Mas did not breach the settlement agreement. The order also rejected Rhodes's contention that filing the settlement agreement constituted a breach of the confidentiality clause.

On September 22, the trial court entered its judgment in favor of the Mas, restoring possession of the property to the Mas, and directing the court clerk to issue a writ of execution.

That same day, September 22, Rhodes, acting in propria persona, filed a notice of appeal. The motion checked that it was from "Judgment after jury trial," going on to note that it was "entered on 9/14/22 or and 9/15/22." This is Appeal No. A166177. Because of the appeal, the clerk did not issue the writ of execution.

On September 27, Mr. Wolff filed a formal substitution of attorneys, substituting himself out. And on September 28, he filed an additional substitution under which Rhodes substituted in, representing herself, the status that remains to this day.

On October 7, Rhodes filed an ex parte application for a "temporary injunction" to prevent enforcement of the judgment (the First Application). The claimed basis was the Mr. Wolff had "acted in haste" and never consulted with her in a "uniform understandable fashion." She also claimed she suffers from "severe mental incompetence." Rhodes requested that the court void the order, issue a show-cause order for a further evidentiary hearing, appoint

6

new counsel to represent her, and "stop the eviction notice" pending the hearing.

Rhodes's declaration in the First Application did not state that she gave the Ma's counsel notice of her intent to appear ex parte to seek the requested relief, and there is no proof that the ex parte papers were served on counsel. Moreover, the First Application did not set forth a date, time, or location for the hearing, and also failed to identify the opposing parties and their counsel or disclose whether there had been any prior attempts to procure the same relief. And although Rhodes claimed that her counsel did not properly consult with her and that she suffered from mental incompetence, she did not state any facts indicating that she would suffer irreparable harm, immediate danger or any other statutory basis for granting relief ex parte. Perhaps most notably, the First Application failed to disclose to the court that she had already appealed the judgment that she sought to overturn, retry, and/or stay.[3]

This filing by Rhodes was improper, both procedurally and substantively. Specifically:

The filing was in disregard of Code of Civil Procedure section 916, subdivision (a), which provides that "perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including

---

[3] Because Rhodes did not give notice to the Ma parties, there is nothing in the record to indicate that they filed opposition. Upon learning of the First Application (and other filings in the superior court and Court of Appeal that were never served on them), the Ma parties' counsel eventually filed with both the superior court and this court objections to Rhodes's unserved filings, pointing out that Rhodes was consistently not properly serving counsel with filed papers, depriving them of statutory notice and an opportunity to be heard.

7

enforcement of the judgment or order . . . ."  (Code Civ. Proc., § 916, subd. (a); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.)  An appeal is "perfected" when the notice of appeal is filed.  (*Kroger Co. v. Workers' Comp. Appeals Bd.* (2012) 210 Cal.App.4th 952, 959.)

Here, Rhodes filed her first notice of appeal on September 22.  That was the day the trial court was divested of power to act on matters "embraced in" or "affected by" the appealed judgment.  Rhodes filed her First Application, seeking to void or vacate the judgment and underlying settlement order, on October 7.  The trial court had no jurisdiction to hear it.

As to the substantive, the Rules of Court hold that the superior court lacked personal jurisdiction over the Mas to hear the First Application.  That is, no application for ex parte relief may be made unless the applicant provides a declaration showing compliance with the notice requirements of California Rule of Court, rule 3.1204.  Further, such application papers must be served on other parties at the first reasonable opportunity and prior to the matter being heard.  (Cal. Rules of Court, rule 3.1206.)  And when a party fails to comply with the service requirements, the court cannot hear the matter, and denial of ex parte relief is mandatory.  (*Newsom v. Superior Court of Sutter County* (2020) 51 Cal.App.5th 1093, 1098–1100 [writ of mandate issued, directing trial court to vacate its ex parte order due to moving parties' failure to serve all application papers on opposing party]; accord, *West v. West* (1979) 92 Cal.App.3d 120, 124; Code Civ. Proc., § 1005, subd. (b).)

On October 7, the trial court denied the First Application.  And on October 26, Rhodes filed her second notice of appeal.  This is Appeal No. A166438.

8

We note that Rhodes also sought the same relief sought in the First Application directly from this court in the context of her already-filed appeal. On October 22, we denied the request, stating "We construe appellant's October 5, 2022 'Emergency Order For Temporary Injunction' as a petition for writ of supersedeas. So construed, the petition is denied."

On December 6, Rhodes filed in this court a motion to augment the record on appeal. This was followed on December 8 by the filing of a supplemental designation of the record on appeal, which supplemental designation improperly included documents that were not part of the superior court file. The Mas objected, and on December 12, we denied the request to augment the record.

On January 30, 2023, Rhodes filed another supplemental designation of additional records on appeal and request to augment the record and additional documents seeking to relitigate the validity of the settlement agreement. Although the requests for relief were made to the trial court, we took up requests for relief ourselves, and on February 19, denied the relief requested in all four filings, holding: "We construe the four documents appellant filed on January 30, 2023, collectively as a petition for writ of supersedeas. So construed, the petition is denied."

On December 28, 2022, Rhodes filed in this court a petition titled "[Appellant's] Response to Notice of Hearing, Financial Hearing Office Re: Waiver of Court Fees, Notice of Default Hearing for Stipulated Judgment," attaching 103 pages of exhibits that were not part of the superior court record or the record on appeal. There, Rhodes requested that she be given another hearing for all superior court dates between October 26, 2022 through November 28, 2022. The petition was assigned appeal No. A166839.

9

Construing the petition as one for a writ of mandate, we denied it on January 4, 2023.

## DISCUSSION

### Introduction, and Some Observations About Rhodes's Briefing

Rhodes has filed separate briefs in the two appeals, the brief in Appeal No. A166177 filed on September 18, 2023 and the brief in Appeal No. A166438 filed two days later, on September 25. As best as we can determine, the two briefs are identical, each totaling six pages and containing 1,494 words.

We begin our discussion by noting that those briefs violate many principles of appellate review, a criticism we make against the background that Rhodes has chosen to represent herself, as is her right. Doing so, however, she is held to the same standard as an attorney. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) Self-representation is not a ground for lenient treatment and, as is the case with attorneys, a person who represents herself "must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) The briefs here fall far short.

The briefs cite, without discussion, to some cases, all of which appear to be federal cases. The brief contains a one and one-half page "Statement of the Case" and a 25-line "Statement of Facts," "facts" that are conclusory in nature and essentially Rhodes's version of what this case is about. This is inappropriate.

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and

10

likewise as to the applicable law.  [Citation.]  [¶]  Misstatements, misrepresentations, and/or material omissions of the relevant facts or law can instantly 'undo' and otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case."  (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2023) ¶ 9:27, italics omitted (Eisenberg).)

Rhodes's briefs violate other principles of appellate advocacy and Rules of Court.  For example, rule 8.204(a)(1)(C) requires that any reference to a matter in the record, whether factual or procedural, be supported by a citation to the volume and page number of the record where the matter appears.  (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970; *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.) Rhodes does not do that here.

Perhaps most fundamentally, Rhodes's statement of appealability represents that it is from a "judgment," but the actual notice of appeal notes that it was from something "entered on 9/14/2022 or and 9/15/2022."  That, of course, was the order, which order is non-appealable.  However, we have the discretion to decide the case on the merits, including, for example, by "deeming" the order to incorporate a judgment and treating the appeal as taken from the judgment (*Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 820) or treating the appeal as from the judgment.  (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1251.)

On top of all that, Rhodes's briefing does nothing more than rehash— and very briefly, and in conclusory terms—her position below, which disregards the admonition from Division One of this court that she is not to merely reargue or "merely reassert [her] position" below.  (*Conderback, Inc. v.*

11

*Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687.) Doing so, Rhodes ignores the most fundamental rule of appellate review, that the rulings of the trial court are presumed correct, and appellant must demonstrate the court committed reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) This, Rhodes has not done.

### Appeal No. A166177 Has No Merit

Rhodes makes one argument in her appeal, that she "has signed the settlement agreement and release of all claims contract construed by defrauded [*sic*]." This argument runs for two pages, and essentially sets forth some boilerplate principles of fraud and deceit from cases—cases, as noted, not from California. Rhodes's table of contents represents that the argument has three parts: the "standard of review," the "elements of the action," and "construed by defrauded." The actual argument does not follow that outline. And, as noted, the argument is nothing more than bare assertions of some general principles, without reference to the setting here. It is manifestly insufficient.

"To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to

12

authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellant['s] argument for [her].' [Citation.]"].)

But even if the argument were not waived, it would fail on the merits.

The standard of review on an order granting a motion to enforce a settlement—where, as here, there was evidence as to factual disputes—is that the court's factual determinations are reviewed under the substantial evidence standard. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911; *Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 544.) There is such evidence here.

The trial court here filed a comprehensive order that, after three introductory paragraphs describing the setting and the background, went on as follows: "The Court has reviewed the certified transcripts of the depositions. Jessica Amenaghawon testified that she was not told anything about Plaintiff's lawsuit against Defendants or whether they had resolved it by settlement. The witness further testified that Plaintiff had not asked her to provide assistance in finding new housing because she had agreed to vacate her apartment [on] Bancroft Avenue in her settlement with Defendants. Candy Lopez, Interim Program Manager at Abode Services, testified that she began searching for more suitable housing for Plaintiff on July 23, 2021, and that the effort continued into 2022. Ms. Lopez testified that Plaintiff told her in April or May 2022 to expedite the process of finding her new housing. Plaintiff then told Ms. Lopez in June 2022 that she wanted Abode Services to slow the process of trying to find her new housing. Ms. Lopez testified that she did not know any details of Plaintiff's lawsuit against Defendants or even which side initiated it. . . .

"The Court can consider extrinsic evidence when seeking to determine whether the parties have agreed to a settlement that can be enforced

13

pursuant to [Code of Civil Procedure section] 664.6; [citations]. . . . In this case, the Court concludes that the parties entered into a valid and binding written settlement agreement. Plaintiff's assertion that Defendants are not entitled to enforce the settlement agreement because Mason Ma disclosed the terms of the settlement to Jessica Amenaghawon and Candy Lopez is without merit. The Court concludes that Mason Ma did not materially breach the confidentiality provision set forth in paragraph 10 of the settlement agreement. The Court also concludes that Defendants are entitled to request the entry of a Judgment in accordance with the terms of the settlement even if Defendants had breached the confidentiality provision. (See *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1184 [plaintiff Hines could seek enforcement of the settlement agreement even though he had not complied with all of his obligations because his performance was not a condition precedent to the defendant's obligations under Civ[.] Code[,] § 1436].)

"Plaintiff's assertion in her opposition that the Court cannot grant Defendants' motion to enforce settlement because she did not expressly waive the protection afforded tenants under the City of Oakland Eviction Moratorium Ordinances Nos. 13606 and 13589 is also without merit. Defendants did not attempt to have Plaintiff evicted by filing an unlawful detainer action. Plaintiff agreed to vacate the premises on June 6, 2022 in the settlement agreement [that] resolved her claims against Defendants. Plaintiff's assertion that Defendants breached the confidentiality clause by filing a copy of the settlement agreement with their motion is also rejected. The agreement clearly provides in section 10 that either side may disclose the terms of the settlement and seek to have the agreement admitted into evidence if it has to file a motion to enforce the settlement. . . ."

All that is substantive evidence.

**Appeal No. A166438 Shall Be Dismissed**

We turn briefly to Appeal No. A166438, and order it dismissed.

Rhodes's brief in Appeal No A166438 does not even mention her ex parte application at all, let alone address any argument on the issue. Simply put, the brief presents absolutely no argument as to the order denying the First Application. In such case, we may treat the appeal as abandoned and order the appeal dismissed on our own motion. (*In re Sade C.* (1996) 13 Cal.4th 952, 994; *County of Kern v. Diller* (1999) 69 Cal.App.4th 1412, 1425; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.) And that we do.

## DISPOSITION

In Appeal No. A166177 the judgment is affirmed. In Appeal No. A166438 the appeal is dismissed. Sau Ma and Mason Ma shall recover their costs on appeal.

15

_____

Richman, J.

We concur:

_____

Stewart, P. J.

_____

Miller, J.

*Rhodes v. Ma* (A166177; A166438)

16